**EXECUTION COPY**

## ASSET PURCHASE AND SALE AGREEMENT

THIS ASSET PURCHASE AND SALE AGREEMENT ("Agreement") is made and entered into this 2nd day of July, 2013, by and between CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company ("Purchaser"), and BUFFETS, INC., a Minnesota corporation ("Seller"). Purchaser and Seller are sometimes collectively referred to in this Agreement as "Parties" or individually as "Party."

## RECITALS

A.     On February 20, 2009, a Second Amended Class Action Complaint entitled In re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation (Case No. 1:05-md-01720-JG-JO) ("Litigation") was filed in the United States District Court for the Eastern District of New York ("District Court"). If the plaintiffs in the Litigation are successful in certifying a class and either prevail in the Litigation or such Litigation results in a settlement ("Settlement Event"), the Seller may be included in the class and, accordingly, may be entitled to a monetary recovery ("Asset"). Whether such recovery will occur is unknown by Seller and Purchaser at the time of this Agreement. If no Settlement Event takes place, the Asset will have no value.

B.     Purchaser is not affiliated with any counsel involved in the Litigation or the District Court.

C.     Seller has previously retained the firm of Brown, Hamilton, Houck & Babcock to assist with the filing of this claim as evidenced by the Amended Recovery Services Agreement attached hereto as Exhibit C.

D.     Following a Settlement Event, it is anticipated that the fixed aggregate amount of the settlement will be allocated *pro rata* among claimants to the settlement proceeds, in a manner to be described in documents approved by the District Court.

E.     All terms used herein and not defined herein shall have the meanings given such terms in the Litigation filings.

F.     The Parties intend to transfer from Seller to Purchaser any and all of the Seller's right, title and interest in and or associated with, or connected in any manner to, any Asset that may arise from the Litigation, subject to the Amended Recovery Services Agreement in Exhibit C.

G.     Purchaser is in the business of purchasing claims from entities entitled to recover funds from both existing class action lawsuit settlements and from pending class action litigation that may or may not result in a settlement.

H.     Purchaser desires to purchase the Asset from Seller, and Seller desires to sell the Asset to Purchaser as provided for in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants, agreements, representations and warranties contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## SECTION 1 – RECITALS INCORPORATED IN AGREEMENT

1.1     The above recitals are hereby incorporated herein by reference.

## SECTION 2 – TERMS OF PURCHASE AND SALE

2.1

2.2     <u>Closing</u>.  The transactions contemplated by this Agreement will be consummated at a closing as follows:

(a)     The closing of the purchase and sale of the Asset ("<u>Closing</u>") will take place via facsimile or electronic mail on or before July 3, 2013.  The date and time the Closing actually occurs are referred herein to as the "<u>Closing Date</u>."

(b)     No later than the Closing Date, Seller shall execute and deliver to Purchaser the Notice of Assignment, in the form attached hereto as <u>Exhibit A</u> ("<u>Assignment</u>") and the Authorization to Obtain Transactional Data, in the form attached hereto as <u>Exhibit B</u> ("<u>Data Authorization</u>", with Assignment, the "<u>Ancillary Agreements</u>").

(c)     Provided that Seller has fully performed its obligations under Section 2.2(b), including delivering to Purchaser the completed schedules associated with the Ancillary Agreements, Purchaser shall pay to Seller at the Closing an amount equal to the Purchase Price in immediately available funds by confirmed wire transfer to a bank account to be designated by Seller no later than 2 p.m. central standard time on July 3, 2013.

(d)     Seller hereby assigns and Purchaser agrees to, and does hereby assume all interest, rights, defenses and obligations of the Seller in the attached Amended Recovery Services Agreement. Purchaser shall defend, indemnify and hold harmless Seller and affiliated companies, and each of their respective officers, directors, employees, and successors and assigns of the foregoing, from any loss, damage, or expense (including reasonable attorneys' fees), arising out of or related to any claims brought by Brown, Hamilton, Houck & Babcock arising out of or related to the Amended Recovery Services Agreement.

2.3    Cooperation of Seller.  Seller understands and acknowledges that in order for Purchaser to verify and/or collect the Asset, Purchaser may require Seller's reasonable assistance, and Seller agrees to provide such reasonable assistance to Purchaser, in the event that a claims administrator appointed in the Litigation ("CA"), Lead Counsel or the District Court audits and/or withholds payment on the Asset pending verification of data within Seller's reasonable possession and/or control.

2.4    Remedy for Disallowed Purchase.  If the Purchase is disallowed, for any reason, following the payment of the Purchase Price, the Purchaser retains the right to recover from future recoveries from the Litigation an amount equal to the sum of the Purchase Price plus interest accrued at an annual rate of 10% ("Interest Payment").  The Interest Payment will be assessed for the period of time elapsed between the date of the payment of the Purchase Price and date the Purchase Price has been repaid to the Purchaser.

2.5    Actions by Purchaser.  Purchaser expressly reserves the right to take any steps it deems reasonable and necessary in order to maximize Purchaser's recovery in respect of the Asset.

2.6    No Assumption of Obligations or Liabilities.  Upon the full execution of this Agreement, Purchaser shall assume all obligations and liabilities relating to the Asset but shall not assume or in any way become liable for any other obligation or liability of the Seller independent of the Asset.

## SECTION 3 - REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Purchaser as follows:

3.1    Organization.  Seller is a corporation duly organized, validly existing and in good standing under the laws of the state of Minnesota.

3.2    Authorization.  The Seller has the requisite power and authority to execute and deliver this Agreement or any Ancillary Agreement, and to perform the transactions contemplated hereby or thereby, and that such performance does not constitute a violation of the Seller's certificate of incorporation, by-laws or any other valid instrument to which the Seller is a party or by which the Seller may be bound.

3.3    Due Execution; Validly Binding Agreement.  This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Seller, enforceable against it in accordance with its terms.

3.4    No Litigation.  There is no known suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or threatened against the Seller or concerning the Asset that could prevent or prohibit Seller from selling the Asset or from otherwise complying in full with the provisions of this Agreement.  Transfer of the Asset pursuant to this Agreement will not breach, violate or otherwise contravene any applicable law, statute, regulation or contractual term.

3.5    <u>Title to Asset; No Liens</u>.  Except as provided for in the Amended Recovery Services Agreement attached hereto, Seller has good, valid and marketable title to the Asset and can sell the Asset free and clear of any mortgage, pledge, lien, security interest, claim or encumbrance.  Seller has not transferred the Asset or any interest therein except to Purchaser hereunder.

3.6    <u>Information Provided to Purchaser</u>.  All information provided to Purchaser by Seller in connection with the sale of the Asset, including, but not limited to, information on dates on which the Seller began accepting Visa and/or MasterCard credit card and/or debit transactions, financial information about the Seller's business (including total United States sales) and any other representations actually or potentially concerning the asset is true, correct and complete to the best of Seller's knowledge.  Seller has made the following Representations or Warranties to Purchaser:

   i.    Seller has not had any direct communications with the District Court, Lead Counsel or any other entity affiliated with the Litigation regarding the Litigation, other than receipt of formal notices from the District Court.

   ii.    Seller warrants that, should a Settlement Event occur, if asked by the District Court, Lead Counsel, the CA or any other entity affiliated with the settlement, Seller will state that (1) Seller never intended to opt-out of the Litigation; (2) Seller never gave any entity any indication of an intent to opt-out of the Litigation; and (3) Seller never authorized any entity to opt-out of the Litigation on Seller's behalf.

   iii.    Seller warrants that if requested by Purchaser and if a Settlement Event should occur, it will provide an affidavit stating that (1) Seller never intended to opt-out of the Settlement Event; (2) Seller never gave any entity any indication of an intent to opt-out of the Settlement Event; and (3) Seller never authorized any entity to opt-out of the Settlement Event on Seller's behalf.

3.7    <u>Independent Investigation</u>.  Seller further acknowledges that it has had an opportunity to conduct its own independent investigation regarding the Asset. Seller has had an opportunity to review the documents and information available through publicly available sources of information.

3.8    <u>No Reliance</u>.  With the exception of any representations and warranties set forth in Section 4 of this Agreement, Seller is not relying on (i) any information provided to Seller or written or oral representations, whether express or implied, by Purchaser or its respective members, shareholders, officers, directors, employees, agents or affiliates or (ii) any information provided to Seller by Purchaser or its respective shareholders, officers, directors, employees, agents or affiliates in assessing the reasonableness of the Purchase Price.  Aside from representations or warranties contained herein, Seller acknowledges that Purchaser expressly disclaims and has not made any warranties, guarantees, promises, or representations of any kind whatsoever regarding the value of the Asset and the anticipated recovery and/or timing of recovery on the Asset.

3.9    <u>Information</u>.  Seller acknowledges that because a Settlement Event had not taken place prior to the payment of the Purchase Price, the value of the Asset and the final recovery on the Asset may not be determined with certainty by Seller or Purchaser as of the time of execution of this Agreement.  Seller further acknowledges that Purchaser may possess material information not known to Seller, and Seller agrees that Purchaser shall have no liability with respect to the non-disclosure of any such information.

3.10    <u>Expectation of Return</u>.  Seller acknowledges that Purchaser's sole intention and expectation in entering into this Agreement is to earn a positive financial return on the Asset.  As such, Seller understands that Purchaser's recovery on the Asset may exceed the Purchase Price.

3.11    <u>Own Advisors</u>.  Seller acknowledges that it has had an opportunity to consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement.

3.12    <u>No Fiduciary or Confidential Relationship</u>.  Seller acknowledges that Seller and Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship, including one of trust, confidence or privity, and that Seller and Purchaser are each acting for their own self-interest.

## SECTION 4 – REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller as follows:

4.1    <u>Organization</u>.  Purchaser is a limited liability company, validly existing and in good standing under the laws of the State of Delaware.

4.2    <u>Authorization</u>.  Purchaser has the requisite power and authority to purchase the Asset from Seller, execute and deliver this Agreement, and to perform the transactions contemplated hereby or thereby.

4.3    <u>Due Execution; Validly Binding</u>.  This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity.

4.4    <u>No Litigation</u>.  There is no suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or threatened, against Purchaser that could prevent or prohibit Purchaser from purchasing the Asset or from otherwise complying in full with the provisions of this Agreement.  Transfer of the Asset pursuant to this Agreement will not breach, violate or otherwise contravene any applicable law, statute, regulation or contractual term.

4.5    <u>Purchaser Solvent</u>.  That Purchaser is solvent and has the funds available to pay the Purchase Price as provided in section 2.2 herein.

4.6    Disclaimers:  No Representations or Warranties.  Purchaser expressly disclaims and does not make any warranties, guarantees, promises, or representations of any kind whatsoever regarding the Asset, including, but not limited to:  (i) the value of the Asset; and (ii) the anticipated recovery or timing of recovery on the Asset.  Purchaser has advised Seller that it should consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement.

4.7    Independent Investigation.  Purchaser acknowledges that it has conducted its own independent evaluation of the transactions contemplated under this Agreement.  Purchaser further acknowledges that it has had an opportunity to conduct its own independent investigation regarding the Litigation, the possibility of a Settlement Event taking place, and the Asset.  Purchaser has had an opportunity to review the documents and information available through publicly available sources of information.

4.8    No Reliance.  Purchaser has decided to enter into this Agreement and undertake the transactions contemplated hereunder solely in reliance on its own evaluation, based on such information as it has deemed appropriate under the circumstances.  With the exception of any representations and warranties set forth in Section 3 of this Agreement, Purchaser is not relying on (i) any information provided to Purchaser or written or oral representations, whether express or implied, by Seller or its agents or affiliates, or (ii) any information provided to Purchaser by Seller or its agents or affiliates.  Aside from representations or warranties contained herein, Purchaser acknowledges that Seller expressly disclaims and has not made any warranties, guarantees, promises, or representations of any kind whatsoever regarding the Asset, including, but not limited to: (i) the value of the Asset, and (ii) the anticipated recovery and/or timing of recovery on the Asset.

4.9    Information.  Purchaser acknowledges that, because a Settlement Event had not taken place prior to the payment of the Purchase Price, the value of the Asset and the final recovery on the Asset may not be determined with certainty by Seller or Purchaser as of the time of execution of this Agreement.  Purchaser further acknowledges that Seller may possess material information not known to it.  Aside from representations or warranties contained herein, Purchaser agrees that Seller shall have no liability with respect to the non-disclosure of any such information.

4.10    Expectation of Return.  Purchaser understands that Purchaser's recovery on the Asset may not exceed the Purchase Price.

4.11    Own Advisors.  Purchaser acknowledges that it has had an opportunity to consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement.

4.12    No Fiduciary or Confidential Relationship.  Purchaser acknowledges that Seller and Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship, including one of trust, confidence or privity, and that Seller and Purchaser are each acting for their own self-interest.

<u>**EXECUTION COPY**</u>

**SECTION 5 - COVENANTS OF SELLER**

Seller covenants to Purchaser as follows:

5.1    <u>Further Assurances</u>.  Seller will reasonably provide, duly execute or deliver, or cause to be provided, duly executed or delivered, to Purchaser such further information and instruments reasonably available to it or under its possession, custody or control and do and cause to be done such further acts as may be reasonably necessary or proper to respond to any audit or inquiry by the CA, Lead Counsel or the District Court regarding the Asset.

5.2    <u>Waiver of Claims</u>.  To the maximum extent permitted by law, Seller will not assert and hereby waives any and all claims against Purchaser or any of its members, officers, directors, employees, agents or affiliates with respect to this Agreement, any Ancillary Agreement or the transactions contemplated hereby or thereby based on any claim that Purchaser had superior or additional information material to a decision to sell or buy the Asset.

5.3    <u>Covenant Not To Sue</u>.  Seller will not commence or maintain any suit thereon against Purchaser or any of its shareholders, officers, directors, employees, agents or affiliates with respect to this Agreement, or the transactions contemplated hereby, whether at law or in equity, based on any claim that Purchaser had superior or additional information material to a decision to sell or buy the Asset.

5.4    <u>Payment Delivery</u>.  If a CA mistakenly sends total or partial payment directly to Seller, Seller will immediately endorse such payment to Purchaser and deliver the payment to Purchaser by personal delivery or by first-class mail, certified, return receipt requested, postage prepaid and addressed to:

> Cascade Settlement Services
> 100 Shoreline Highway, Suite B-125
> Mill Valley, CA  94941
> Attn:  John Chilcott

**SECTION 6 - GENERAL**

6.1    <u>Severability</u>.  In the event that any provision herein becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision.

6.2    <u>Costs</u>.  The Parties shall each pay their own costs and expenses (including attorney's fees and accountants' fees) incurred or to be incurred in negotiating, preparing and executing this Agreement.

6.3    <u>Entire Agreement</u>.  This Agreement represents the entire agreement and understanding between the Parties regarding the sale and purchase of the Asset and supersedes any and

all prior representations, warranties agreements and understandings, whether written or oral, concerning the sale and/or purchase of the Asset.

6.4    <u>No Oral Modification</u>.  This Agreement may only be amended in writing signed by both Parties.

6.5    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Minnesota, without regard to its conflict of law rules, principles or provisions of such state or of any other state.

6.6    <u>Headings</u>.  Section headings are for convenient reference only and will not affect the meaning or have any bearing on the interpretation of any provision of this Agreement.

6.7    <u>Counterparts</u>.  This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement.  Facsimile and .pdf signatures shall be considered original signatures. If so signed, the Agreement becomes effective when both signature pages are attached.

6.8    <u>Voluntary Execution of Agreement</u>.  This Agreement is executed voluntarily and without any duress or undue influence on the part or on behalf of the Parties hereto.

6.9    <u>References</u>.  Seller agrees that Purchaser may disclose Seller's identity and the Purchase Price only to prospective sellers in an effort to promote Purchaser's business.  No other disclosures for any other reason are permitted without further written permission from Seller.

6.10    <u>Notices</u>.  All notices, requests, demands or any other communication made under, pursuant to, or in accordance with this Agreement, except for normal day-to-day business communications, which may be made orally or in a writing, shall be in writing and shall either be delivered personally or deposited in the United States mail and sent by first-class mail, certified, return receipt requested, postage prepaid and properly addressed as follows:

| If to Purchaser: | If to Seller: |
|---|---|
| Cascade Settlement Services LLC<br>100 Shoreline Highway, Suite B-125<br>Mill Valley, CA  94941<br>Attn:  John Chilcott | Buffets, Inc.<br>405 Lancaster Avenue<br>Greer, SC 29650<br>Attn: General Counsel |

or to such other address(es) as a Party hereto may indicate to the other Party in the manner provided for herein.  Notices given by mail shall be deemed effective and complete forty-eight (48) hours following the time of posting and mailing, and notices delivered personally shall be deemed effective and complete at the time of delivery and the obtaining of a signed receipt.

IN WITNESS WHEREOF, the Agreement has been executed by the Parties as of the date and year provided above.

CASCADE SETTLEMENT SERVICES LLC    BUFFETS, INC.

By: Bryan Waters                   By: _____

By: _____        By: _____
Name: Bryan Waters                 Name: _____
Title:  Chief Executive Officer     Title: _____

*[Signature Page]*

IN WITNESS WHEREOF, the Agreement has been executed by the Parties as of the date and year provided above.

CASCADE SETTLEMENT SERVICES LLC BUFFETS, INC.

By: Bryan Waters      By: *Paul E. Holounia*

By:            By:
Name: Bryan Waters     Name: PAUL HOLOUNIA
Title: Chief Executive Officer   Title: VP FINANCE / ASST. SEC.

*[Signature Page]*

To:    Claims Administrator for Any Recovery Arising from **IN RE: PAYMENT CARD INTERCHANGE FEE AND MERCHANT-DISCOUNT ANTITRUST LITIGATION** (Case Number 1:05-md-01720-JG-JO)

This Notice of Assignment transfers and assigns to **CASCADE SETTLEMENT SERVICES LLC** ("Purchaser") all of **BUFFETS, INC.'s** ("Company") right, title and interest in and to or associated with, or connected in any manner to, any recovery arising from the class action litigation of In Re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation (Case No 1:05-md-01720-JG-JO) (the "Recovery").

The rights assigned to Purchaser include, but are not limited to, the Company's right to file a claim in connection with a settlement, receive any recovery, and to challenge any and all estimates for payment of that claim. The Company has provided Purchaser with merchant identification information listed on and attached hereto as Schedule A, Schedule B and Schedule C.

Purchaser is now the legal and equitable owner of all rights associated with any Recovery. You should deal directly with Purchaser or its duly appointed agents, on all matters pertaining to the Company's rights to any Recovery. Further, in accordance with the Assignment, any and all payments relating to any Recovery should be made payable to Purchaser and sent to the following address:

> Cascade Settlement Services
> 100 Shoreline Highway, Suite B-125
> Mill Valley, CA  94941
> Attn:  John Chilcott

Moreover, any and all correspondence, documents or any other communications pertaining to the Recovery be directed to Purchaser at the above address.

Company Name:    Buffets, Inc.    Attn: General Counsel
Company Address:  405 Lancaster Ave
                  Greer, SC 29650

Date:   July 2, 2013

By:    *Paul Holovnia*
Name:  PAUL HOLOVNIA
Title: VP FINANCE / ASST. SEC.

In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation, MDL 1720
List of Buffets, Inc.'s subsidiaries and affiliates as of November 2023 per the Asset Purchase Agreement dated 7/2/2013

| Account Name | Client/Business Entity Name | TIN |
|---|---|---|
| Buffets Inc. | BIG R PROCUREMENT COMPANY, LLC | 56-2175198 |
| Buffets Inc. | BUFFETS FRANCHISE HOLDINGS, LLC, | 33-1158749 |
| Buffets Inc. | BUFFETS HOLDINGS, INC. | 22-3754018 |
| Buffets Inc. | BUFFETS LEASING COMPANY LLC | 42-1638138 |
| Buffets Inc. | BUFFETS RESTAURANTS HOLDINGS INC. | 20-3999569 |
| Buffets Inc. | BUFFETS, INC. | 41-1462294 |
| Buffets Inc. | Distinctive Dining, Inc. | 41-1923069 |
| Buffets Inc. | FIRE MOUNTAIN LEASING COMPANY, LLC | 20-5877452 |
| Buffets Inc. | Fire MOUNTAIN MANAGEMENT GROUP, LLC | 20-5877299 |
| Buffets Inc. | Fire Mountain Restaurants Inc | 57-0968003 |
| Buffets Inc. | FIRE MOUNTAIN RESTAURANTS LLC | 57-0968003 |
| Buffets Inc. | HOMETOWN BUFFET, INC., | 33-0463002 |
| Buffets Inc. | HOMETOWN LEASING COMPANY LLC | 42-1638142 |
| Buffets Inc. | HRE MOUNTAIN MANAGEMENT GROUP, LLC, | 20-5877299 |
| Buffets Inc. | OCB LEASING COMPANY LLC | 42-1638147 |
| Buffets Inc. | OCB PURCHASING CO., | 41-1777610 |
| Buffets Inc. | OCB Restaurant Co. | 41-1777607 |
| Buffets Inc. | OCB RESTAURANT COMPANY LLC | 41-1777607 |
| Buffets Inc. | RIJFFETS, INC., | 41-1462294 |
| Buffets Inc. | RYAN'S RESTAURANT GROUP, INC, | 57-0657895 |
| Buffets Inc. | Ryan's Restaurant Group, LLC | 57-0657895 |
| Buffets Inc. | RYAN'S RESTAURANT LEASING COMPANY, LLC | 20-5877405 |
| Buffets Inc. | RYAN'S RESTAURANT MANAGEMENT GROUP | 20-5876739 |
| Buffets Inc. | TAHOE JOE'S LEASING COMPANY, LLC | 42-1638145 |
| Buffets Inc. | TAHOE JOE'S, INC. | 91-1957129 |
| | | |