**ASSET PURCHASE AGREEMENT**

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement"), dated as of March __29__, 2022, is by and between the **BUFFETS UNSECURED CREDITORS' TRUST** ("Trust" or "Seller") **of BUFFETS, LLC**, **ET AL.** (collectively, "Debtors"),[1] **BANKRUPTCY ESTATES** and **OAK POINT PARTNERS, LLC** ("Purchaser").

**WITNESSETH:**

**WHEREAS**, on or about March 7, 2016, Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas ("Court"), jointly administered under Case No. 16-50557; and

**WHEREAS**, on April 27, 2017, the Court entered an order confirming the Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code ("Plan"), pursuant to which the Trust was created and META Advisors LLC (the "Unsecured Creditors' Trustee") was appointed trustee of the Trust and vested with the power and duty to administer certain assets of the Debtors that were transferred to the Trust free and clear of all claims and interests of creditors, as provided in the Plan and pursuant to 11 U.S.C. § 1141(c); and

**WHEREAS**, within 30 days of the execution of this Agreement, the Unsecured Creditors' Trustee intends to complete[2] a final distribution ("Final Distribution") to its beneficiaries in the approximate aggregate distribution amount of $3,282,250; and

**WHEREAS**, there may be Final Distribution checks mailed to claim holders which remain undeliverable and/or non-negotiated for any reason as of 180 days after the date upon which they were mailed ("Funds From Uncashed Checks"); and

**WHEREAS**, at the time of the execution of this Agreement and continuing into the future, there may be property of Trust remaining, consisting of known or unknown assets or claims which have not been previously sold, assigned, or transferred (collectively, "Remnant Assets"); and

**WHEREAS**, Remnant Assets specifically **include** Funds From Uncashed Checks; and

**WHEREAS**, Remnant Assets specifically **exclude**: (a) cash held at the time of this Agreement in the Seller's fiduciary bank account for the Debtors' cases (unless and until any such cash represents Funds From Uncashed Checks), including the Trust expense reserves; (b) any and all Goods[3] (e.g., books and records) of the Debtors, if any, transferred to the Trust; and (c) the Purchase Price (as hereinafter defined) to be delivered pursuant hereto; and

**WHEREAS**, Seller has the power and authority to sell and assign all right, title and interest in

---

[1] Debtors, along with the last four digits of their federal tax identification numbers, are as follows: Buffets, LLC (2294); Hometown Buffet, Inc. (3002); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); Fire Mountain Restaurants, LLC (8003); and Tahoe Joe's, Inc. (7129).

[2] On or after March 24, 2022, by and through its disbursing agent, the Unsecured Creditors' Trustee made a catch-up final distribution in the aggregate amount of approximately $75,000 to convenience creditors classified in Class 5 under the Plan. The balance of Final Distributions, to be made to holders of allowed general unsecured claims classified in Class 4 under the Plan, has not been made as of the date of this Agreement.

[3] The term "Goods" as used herein shall have the meaning ascribed to it under § 9-102(a)(44) of the Uniform Commercial Code.

1

4872-1248-2585v.2

CONFIDENTIAL and SUBJECT TO CONFIDENTIALITY and PRIVACY LAWS
DO NOT DISSEMINATE WITHOUT WRITTEN PERMISSION FROM OAK POINT PARTNERS

and to the Remnant Assets to Purchaser, including, but not limited to the proceeds thereof.

**NOW THEREFORE**, in consideration of the promises and mutual undertakings herein contained, Seller and Purchaser agree as follows:

1. **<u>Purchase Price.</u>** The Purchase Price shall be good funds in the amount of REDACTED payable within 3 business days of receipt by Purchaser of this executed Agreement.

2. **<u>Assignment of Remnant Assets.</u>** Seller hereby irrevocably and unconditionally sells, assigns, transfers and conveys to Purchaser all of the Seller's right, title and interest under, in and to the Remnant Assets, as well as any and all claims and rights related to the Remnant Assets, including, without limitation, all cash, securities, instruments and other property that may be paid or issued in conjunction with the Remnant Assets and all amounts, interest, and costs due under the Remnant Assets.

3. **<u>Authority to Sell.</u>** The sale of the Remnant Assets by the Seller is made pursuant to the authority vested in the Seller as set forth in the orders entered by the Court, and as permissible under the Bankruptcy Code and applicable state and federal law.

4. **<u>List of Final Distribution Checks.</u>** Within 5 business days of the mailing of the Final Distribution, Seller or a representative of Seller will deliver to Purchaser a true and correct list of all checks sent in the Final Distribution, including each check number, dollar amount and payee name.

5. **<u>Return Address on Final Distribution Checks.</u>** Seller agrees that it will use Purchaser's post office box (PO Box 1033, Northbrook, IL 60065-1033) as the return address on all envelopes containing Final Distribution checks; provided, however, that distributions to the list of creditors designated by Seller to Purchaser substantially contemporaneous with the issuance of Final Distributions (the "Special Mailing Distributions") may be made by wire or sent by Federal Express. Neither the Seller nor Purchaser will take any affirmative action to notify or locate holders of any Final Distribution checks which are returned as undeliverable or remain uncashed; provided, however, that this provision does not apply to (i) a request by Seller for recipients to cash their checks promptly included in any letter accompanying the Final Distribution check; (ii) the Seller or its professionals' response to unsolicited creditor inquiries regarding distributions or creditor requests to reissue checks to the extent provided in the Plan and Trust Agreement; and (iii) Special Mailing Distributions. Notwithstanding the foregoing, Purchaser agrees that in the event the U.S. Postal Service returns any Final Distribution check due to an expired forwarding order and/or provides an address for the intended recipient, Purchaser shall promptly re-direct the check to the provided address with proper postage. Upon the expiration of the 180th day period following the date of mailing of Final Distribution checks, Purchaser shall have the right at its discretion to negotiate any checks in its possession.

6. **<u>Turnover of Funds From Uncashed Checks.</u>** Seller agrees that upon the expiration of the 180th day following the date of mailing of Final Distribution checks, the Seller or its representatives will complete a reconciliation of the checks mailed in the Final Distribution and shall promptly transfer any remaining Funds From Uncashed Checks to Purchaser or make arrangements for the financial institution where the funds are being held to transfer such funds to Purchaser. In the event that the Seller or its representatives do not promptly transfer such Funds From Uncashed Checks to Purchaser, Purchaser is hereby authorized by Seller to act in accordance with the Limited Power of Attorney contained herein to instruct the financial institution to promptly deliver the Funds From Uncashed Checks to Purchaser.

7. **<u>Payments Received on Remnant Assets.</u>** Seller further agrees that any payments received by Seller on account of any Remnant Assets shall constitute property of the Purchaser to which the Purchaser has an absolute right, and that Seller will promptly deliver such payment to Purchaser at Purchaser's address

2

4872-1248-2585v.2

CONFIDENTIAL and SUBJECT TO CONFIDENTIALITY and PRIVACY LAWS
DO NOT DISSEMINATE WITHOUT WRITTEN PERMISSION FROM OAK POINT PARTNERS

set forth below.  Seller agrees to use reasonable efforts to forward to Purchaser notices received with respect to any Remnant Assets.

8.   **Seller's Representations and Warranties.**  In consideration of Purchaser's agreements herein and to induce Purchaser to enter into this Agreement, Seller represents and warrants to Purchaser that Seller has full lawful right, title, power and authority to enter into this Agreement and to convey Seller's interest to Purchaser in the Remnant Assets as is set forth in this Agreement.

**EXCEPT AS SPECIFICALLY SET FORTH HEREIN, THE SELLER SELLS, ASSIGNS, AND TRANSFERS THE REMNANT ASSETS TO THE PURCHASER "AS IS, WHERE IS" WITHOUT ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, WHETHER EXPRESS, IMPLIED OR IMPOSED BY LAW.**

9.   **Free and Clear Sale.**  The sale of Remnant Assets shall be free and clear of any liens, claims, or encumbrances to the extent provided for in the Plan and permissible under the Bankruptcy Code.

10.  **No Assumption of Liabilities.**  Notwithstanding any other provision of this Agreement, the parties agree that Purchaser is acquiring only the Remnant Assets and rights and interests related thereto, and that Purchaser is not acquiring or assuming, nor shall it be deemed to have acquired or assumed, any liabilities or obligations, including lien obligations, of Seller or its affiliates of any kind or nature, whatsoever, whether known or unknown, existent or future, arising out of, or in connection with, the Remnant Assets, except as may otherwise expressly be provided herein.

11.  **Documents of Assignment.**  From time to time upon request from Purchaser, Seller shall execute and deliver to Purchaser such documents reasonably requested by Purchaser to evidence and effectuate the transfer contemplated by this Agreement in a form reasonably acceptable to the parties hereto.  However, Purchaser shall reimburse Seller for its reasonable costs associated with such compliance.  Further, Purchaser acknowledges that Seller may seek to destroy or abandon the books and records of the Debtors (to the extent received) and/or the Trust, and Seller has no obligation to maintain such books and records for the purposes of this Agreement.

12.  **Limited Power of Attorney.**  Solely with respect to the Remnant Assets, and to the extent permitted by law, Seller hereby irrevocably appoints Purchaser as its true and lawful attorney and authorizes Purchaser to act in Seller's stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Remnant Assets herein assigned. Seller grants unto Purchaser full authority to do all things necessary to enforce the transfer of the Remnant Assets to Purchaser and its rights thereunder pursuant to this Agreement.

13.  **Entire Agreement.**  This Agreement embodies the entire agreement and understanding between Seller and the Purchaser and supersedes any and all prior agreements and understandings with respect to the subject matter hereof. This Agreement may not be amended or in any manner modified unless such amendment or modification is in writing and signed by both parties.

14.  **Benefits and Binding Effect.**  All provisions contained in this Agreement or any document referred to herein or relating hereto shall inure to the benefit of and shall be binding upon the respective successors and assigns of Seller and the Purchaser.

15.  **Governing Law.**  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas, without giving effect to choice of law principles of the State of Texas.

16.  **Counterparts.**  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument, and copies or

3

4872-1248-2585v.2

CONFIDENTIAL and SUBJECT TO CONFIDENTIALITY and PRIVACY LAWS
DO NOT DISSEMINATE WITHOUT WRITTEN PERMISSION FROM OAK POINT PARTNERS

facsimiles of execution signatures shall be equivalent to original signatures.

**THIS AGREEMENT** has been duly executed as of the day and year first above written.

**OAK POINT PARTNERS, LLC**

By: _____
Name:  ERIC LINN
Its:  President

Address *(for regular mail and mail forwarding)*: PO Box 1033, Northbrook, IL 60065-1033
Address *(for overnight delivery)*: 5215 Old Orchard Road, Suite 1000, Skokie, IL 60077
Tel (847) 577-1269        Fax (847) 655-2746

**BUFFETS UNSECURED CREDITORS' TRUST
of BUFFETS, LLC, ET AL., BANKRUPTCY ESTATES**

By: META ADVISORS LLC, AS UNSECURED CREDITORS' TRUSTEE

By: _____
Name: DANA P. KANE
Its: Chief Compliance Officer

Address: c/o Kelley Drye & Warren LLP, One Jefferson Road, 2nd Floor, Parsippany, NJ 07054
(973) 503-5900            Fax (973) 503-5950

4

4872-1248-2585v.2

CONFIDENTIAL and SUBJECT TO CONFIDENTIALITY and PRIVACY LAWS
DO NOT DISSEMINATE WITHOUT WRITTEN PERMISSION FROM OAK POINT PARTNERS