IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BUFFETS, LLC, *et al.*[1] | § | Case No. 16–50557-rbk |
| | § | |
| Debtors. | § | (Jointly Administered) |

## DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

AKERMAN LLP

/s/ David W. Parham
David W. Parham, SBN: 15459500
John E. Mitchell, SBN: 00797095
2001 Ross Avenue, Suite 2550
Dallas, TX 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339
david.parham@akerman.com
john.mitchell@akerman.com

and

Andrea S. Hartley (Florida Bar No. 864234)
Esther A. McKean (Florida Bar No. 28124)
Amy M. Leitch (Florida Bar No. 90112)
Katherine Fackler (Florida Bar No. 68549)
Three Brickell City Centre
98 Southeast Seventh Street
Miami, FL 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095
andrea.hartley@akerman.com
esther.mckean@akerman.com
amy.leitch@akerman.com
katherine.fackler@akerman.com

COUNSEL FOR DEBTORS AND
DEBTORS-IN-POSSESSION

Dated: April 4, 2017

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Buffets, LLC (2294); Hometown Buffet, Inc. (3002); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); Fire Mountain Restaurants, LLC (8003); and Tahoe Joe's, Inc. (7129). The address for all of the Debtors is 120 Chula Vista Drive, Hollywood Park, Texas 78232.

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................... 1

I. DEFINITIONS AND CONSTRUCTION OF TERMS ........................................................ 2
    A.    Definitions........................................................................................................... 2
    B.    Interpretation, Application of Definitions and Rules of Construction.................. 16

II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS.......................................... 16
    A.    Introduction......................................................................................................... 16

III. TREATMENT OF UNCLASSIFIED CLAIMS................................................................. 17
    A.    Administrative Claims......................................................................................... 17
    B.    Fee Claims........................................................................................................... 18
    C.    Substantial Contribution Claim of Value Extraction Services ............................ 18

IV. TREATMENT OF CLAIMS AND EQUITY INTERESTS .............................................. 18
    A.    Class 1 – Priority Claims ..................................................................................... 18
    B.    Class 2 – Other Secured Claims........................................................................... 19
    C.    Class 3 – Allowed PACA Claims ........................................................................ 20
    D.    Class 4 – General Unsecured Claims................................................................... 20
    E.    Class 5 – Convenience Claims............................................................................. 20
    F.    Class 6 – Subordinated Claims ............................................................................ 21
    G.    Class 7 – Equity Interests ..................................................................................... 22

V. PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE
REORGANIZED DEBTORS ............................................................................................ 22
    A.    Amendments to Certificates of Incorporation..................................................... 22
    B.    Management......................................................................................................... 22
    C.    Corporate Action................................................................................................. 23

VI. SUBSTANTIVE CONSOLIDATION OF THE DEBTORS ............................................. 23

VII. PROVISIONS REGARDING MEANS OF IMPLEMENTATION, VOTING,
DISTRIBUTIONS, AND TREATMENT OF DISPUTED CLAIMS............................. 25
    A.    Funding the Unsecured Creditors' Trust ............................................................. 25
    B.    Payment of Claims............................................................................................... 25
    C.    Restructuring Transactions .................................................................................. 25
    D.    Unsecured Creditors' Trust ................................................................................. 25
    E.    The Trust Advisory Board ................................................................................... 28
    F.    Voting of Claims................................................................................................. 29
    G.    Distributions........................................................................................................ 29
    H.    Estimation ........................................................................................................... 34
    I.    Nonconsensual Confirmation.............................................................................. 35
    J.    Intercompany Claims .......................................................................................... 35
    K.    Liens.................................................................................................................... 35

40967845v2

|   |   | Enforcement of Subordination | 35 |
| L. | | | |

VIII. EFFECT OF CONFIRMATION OF THE PLAN ... 36
| A. | Continued Corporate Existence | 36 |
| B. | Settlement of Treatment of General Unsecured Claims | 36 |
| C. | Dissolution of Creditors' Committee | 36 |
| D. | Vesting of Property | 37 |
| E. | Discharge of the Debtors | 37 |
| F. | Injunction | 37 |
| G. | Preservation of Causes of Action | 38 |
| H. | Votes Solicited in Good Faith | 38 |
| I. | Administrative Claims Incurred After the Effective Date | 38 |
| J. | Insider Releases by the Debtors | 38 |
| K. | Insider Releases by non-Debtors | 39 |
| L. | Releases of Creditors' Committee, Committee Members and Committee Professionals | 40 |
| M. | Exculpation and Injunction in Respect of Released Parties | 41 |
| N. | Term of Bankruptcy Injunction or Stays | 41 |
| O. | Preservation of Insurance | 41 |
| P. | Indemnification Obligations Owed by the Debtors | 42 |

IX. RETENTION OF JURISDICTION ... 42

X. MISCELLANEOUS PROVISIONS ... 43
| A. | Payment of Statutory Fees | 43 |
| B. | Modification of the Plan | 43 |
| C. | Governing Law | 43 |
| D. | Filing or Execution of Additional Documents | 44 |
| E. | Withholding and Reporting Requirements | 44 |
| F. | Exemption From Transfer Taxes | 44 |
| G. | Waiver of Federal Rule of Civil Procedure 62(a) | 44 |
| H. | Exhibits/Schedules | 44 |
| I. | Notices | 44 |
| J. | Plan Supplement | 45 |
| K. | Conflict | 45 |

XI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ... 46
| A. | Assumption and Rejection of Executory Contracts and Unexpired Leases | 46 |
| B. | Limited Extension of Time to Assume or Reject | 47 |
| C. | Cure | 47 |
| D. | Rejection Damage Claims | 47 |

XII. BENEFIT PLANS ... 48

XIII. EFFECTIVENESS OF THE PLAN ... 49
| A. | Conditions Precedent to Confirmation | 49 |
| B. | Conditions Precedent to Effectiveness | 49 |

ii

40967845v2

C.   Waiver of Conditions .......................................................................... 50
D.   Effect of Failure of Conditions ............................................................ 50
E.   Vacatur of Confirmation Order ............................................................ 50
F.   Revocation, Withdrawal, or Non-Consummation ................................ 50

40967845v2

## INTRODUCTION

Buffets, LLC, Hometown Buffet, Inc., OCB Restaurant Company, LLC, OCB Purchasing, Co., Ryan's Restaurant Group, LLC, Fire Mountain Restaurants, LLC, and Tahoe Joe's, Inc., the above-captioned debtors and debtors in possession, propose the following joint plan of reorganization under section 1121(a) of the Bankruptcy Code.[1]

The Debtors' Chapter 11 Cases are being jointly administered pursuant to an order of the Court, and the Plan is being presented as a joint plan of reorganization of the Debtors. Claims against, and Interests in, the Debtors (other than Administrative Claims) are classified in Article II hereof and treated in Article IV hereof.

Reference is made to the Disclosure Statement accompanying this Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, properties, results of operations, and projections for future operations and risk factors, together with a summary and analysis of this Plan. All Claim holders entitled to vote on this Plan are encouraged to consult the Disclosure Statement and to read this Plan carefully before voting to accept or reject this Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE COURT, HAVE BEEN AUTHORIZED BY THE COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

---

[1] Capitalized terms used in this Introduction shall have the meanings ascribed to them herein below.

1

# I.

## DEFINITIONS AND CONSTRUCTION OF TERMS

### A.   Definitions

Unless otherwise defined herein, or the context otherwise requires, the following terms shall have the respective meanings set forth below:

*ACE Companies*
means ACE American Insurance Company and its affiliates or successors.

*ACE Companies' Claim*
means the Claim(s) of the ACE Companies arising from the Debtors' obligations under the ACE Insurance Program whether such claims/obligations arise or become liquidated before or after the Effective Date

*ACE Collateral*
means any and all collateral, security, funds, and/or other assets provided by or on behalf of the Debtors (or any of their predecessors) to the ACE Companies to secure the Debtors' obligations under the ACE Insurance Program and all proceeds thereof including, but not limited to, any credits and any letter(s) of credit and the proceeds thereof.

*ACE Insurance Program*
means all insurance policies that have been issued at any time by the ACE Companies to provide coverage to any of the Debtors and all agreements, documents or instruments related thereto.

*Acquisition Debt*
means obligations arising under promissory notes and related loan documents executed in favor of the Pre-Petition Secured Creditors' in the approximate principal, aggregate amount of $46,168,000, of which the Debtors are obligors or guarantors and/or for which the Debtors, or any of them, pledged assets as collateral to secure the loans.

2

| | |
|---|---|
| ***Administrative Claim*** | means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' business, any indebtedness or obligations incurred or assumed by the Debtors in Possession in connection with the conduct of their business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent awarded by the Court under sections 330, 331 or 503 of the Bankruptcy Code, any fees or charges assessed against the Debtors' estates under section 1930 of chapter 123 of title 28 of the United States Code, and any Claim for goods delivered to the Debtors within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code. |
| ***Administrative Claims Bar Date*** | means the first business day that is thirty (30) days after the Confirmation Date. |
| ***Alamo Buffets Advance*** | means a Cash advance in an amount of not less than $6.5 million to be provided to the Debtors by Alamo Buffets, LLC, on or before the Effective Date, in order to fund the Debtors' payment of the Unsecured Creditors' Trust Cash Component pursuant to Article VII.A(i) and to the extent necessary, Claims to be paid on the Effective Date. |
| ***Alamo Buffets Advance Agreement*** | means an agreement or agreements pursuant to which the Alamo Buffets Advance shall be made. |
| ***Alamo CRG Secured Claim*** | means the Claim of Alamo CRG LLC related to that certain promissory note issued by the Debtors and certain affiliated non-debtors dated December 31, 2015 in the original principal amount of $2 million. |

3

| | |
|---|---|
| ***Allowed*** | means, with reference to any Claim, (a) any Claim against any of the Debtors that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim that is not Disputed by the Claims Objection Deadline, (d) any Claim the amount or existence of which, if Disputed, (i) has been determined by a Final Order of a court of competent jurisdiction, or (ii) has been allowed by Final Order of the Court, or (e) any Claim which the Reorganized Debtors or the Unsecured Creditors' Trustee deems allowed, depending upon the party responsible for distribution under the Plan; provided, however, if the time to object to Claims has not expired, a Claim shall not be deemed allowed unless designated as such by the Reorganized Debtors or the Unsecured Creditors' Trustee, depending upon the party responsible for distribution under the Plan; provided, however, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Court shall not be considered "Allowed Claims" hereunder. |
| ***Assigned Causes of Action Agreement*** | means the agreement pursuant to which rights with respect to the Assigned Non-Debtor Causes of Action and/or to receive proceeds thereof are to be assigned to the Unsecured Creditors' Trust. Such agreement shall be in a form acceptable to the Debtors, and the Creditors' Committee and shall be included in the Plan Supplement. |

| | |
|---|---|
| ***Assigned Non-Debtor Causes of Action*** | means rights, claims or causes of action of Alamo Ovation, LLC, Buffets Restaurants Holdings, Inc., and Buffets Holdings, LLC, (collectively, the "Non-Debtor Parent Companies"), and/or affiliated Persons against parties including, without limitation, the former equity holders of the Non-Debtor Parent Companies and/or former officers and directors of such entities, as to which rights of recovery or proceeds thereof (including, without limitation, any rights under any insurance policies) are to be assigned to the Unsecured Creditors' Trust pursuant to the Assigned Causes of Action Agreement, as well as any rights of the Non-Debtor Parent Companies under or with respect to any insurance policy issued by the ACE Companies prior to the Petition Date for workers' compensation, automobile liability, or general liability coverage to any of the Debtors or the Non-Debtor Parent Companies, including, without limitation, with respect to any excess collateral or other amounts held by or for the benefit of the ACE Companies; provided, however, that, with respect to any claims asserted against Alamo Ovation, LLC or any claims asserted against guarantors of Alamo Ovation, LLC with respect to the obligations of Alamo Ovation, LLC under the Merger Agreement, by the former equity holders and/or pre-merger officers and directors of the other Non-Debtor Parent Companies which arise under the Agreement and Plan of Merger dated July 20, 2015 (pursuant to which Alamo Ovation, LLC acquired directly or indirectly the other Non-Debtor Parent Companies and Debtors (the "Merger Agreement")), Alamo Ovation, LLC, as well as its owners and the guarantors of the consideration under the merger, reserve and retain the right to assert as a set off or defense any "Direct Claims" or "Third Party Claims" of Alamo Ovation, LLC that arise under the Merger Agreement or which could be asserted by Alamo Ovation, LLC against the "Escrow Fund" (as such terms are defined under the Merger Agreement). |
| ***Automobile Liability Claims*** | means any claim arising from an automobile accident for which the Debtors had insurance. |
| ***Avoidance Actions*** | means those certain claims or causes of action of the Estates arising out of or maintainable pursuant to sections 510, 542, 543, 544, 545, 547, 548, 550, or 551 of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date. A non-exhaustive list of potential Avoidance Actions shall be included in the Plan Supplement. |
| ***Ballots*** | means each of the ballot forms distributed with the Disclosure Statement to each holder of an Impaired Claim (other than to holders not entitled to vote on the Plan) upon which is to be indicated, among other things, acceptance or rejection of the Plan. |

5

| | |
|---|---|
| ***Bankruptcy Code*** | means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the date hereof. |
| ***Bankruptcy Rules*** | means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and local rules of the Court, as the context may require. |
| ***Buffets*** | means Buffets, LLC. |
| ***Business Day*** | means any day on which commercial banks are open for business, and not authorized to close, in the City of New York, New York, except any day designated as a legal holiday by Bankruptcy Rule 9006(a). |
| ***Cash*** | means legal tender of the United States of America. |
| ***Causes of Action*** | means all claims (including, without limitation, any right to recover excess proceeds, if any, of ACE Collateral) choses in action and causes of action, suits, debts, sums of money, damages, demands, judgments and Avoidance Actions, whether known or unknown, owned by the Debtors as of the Effective Date (including causes of action which can be asserted derivatively), as well as any Cash and non-Cash proceeds thereof, whether arising under the Bankruptcy Code or other federal, state or foreign law, equity or otherwise, other than the Excluded Causes of Action or any claims or causes of action released pursuant to the terms of this Plan. |
| ***Chapter 11 Cases*** | means the chapter 11 cases commenced by the Debtors. |
| ***Claim*** | means any claim, as such term is defined in section 101(5) of the Bankruptcy Code. |
| ***Claims Agent*** | means Donlin, Recano & Company, Inc. or any successor thereto. |
| ***Claims Objection Deadline*** | means the first business day that is one hundred eighty (180) days after the Effective Date, or such other later date the Court may establish upon a motion by the Reorganized Debtors or Unsecured Creditors' Trustee, as applicable, which motion may be filed before or after such deadline and may be approved without a hearing and without notice to any party. |
| ***Class*** | means a group of Claims or Equity Interests as classified under the Plan. |

6

| | |
|---|---|
| *Collateral* | means any property or interest in property of the Debtors' estates subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law. |
| *Collateral Assignment of Real Property Leases* | means a collateral assignment of leases, substantially in the form to be included in the Plan Supplement, to be executed by the Reorganized Debtors in favor of the Unsecured Creditors' Trust with respect to one or more Real Property Leases. |
| *Confirmation Date* | means the date on which the Confirmation Order is entered by the Court. |
| *Confirmation Hearing* | means the hearing to consider confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, as it may be adjourned or continued from time to time. |
| *Confirmation Order* | means the order entered by the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code. |
| *Convenience Claim* | means any Claim in an amount no greater than $7,500, or any Claim which has been voluntarily reduced to $7,500 by the holder thereof pursuant to an election made on such holder's Ballot or any other agreement in writing. |
| *Court* | means, (a) the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, having jurisdiction over the Chapter 11 Cases; (b) to the extent there is no reference pursuant to section 157 of title 28 of the United States Code, the United States Bankruptcy Court for the Western District of Texas, San Antonio Division; and (c) any other court having jurisdiction over the Chapter 11 Cases or proceedings arising therein. |
| *Creditors' Committee* | means the Official Committee of Unsecured Creditors' appointed by the United States Trustee in the Debtors' Chapter 11 Cases, as constituted from time to time. |
| *Cure Claim* | means all Claims arising under or relating to the assumption or assumption and assignment of any executory contract or unexpired lease by any of the Defendants. |
| *Debtors* | means Buffets, LLC, Hometown Buffet, Inc., OCB Restaurant Company, LLC, OCB Purchasing, Co., Ryan's Restaurant Group, LLC, Fire Mountain Restaurants, LLC, and Tahoe Joe's, Inc. |

7

| | |
|---|---|
| ***Debtors in Possession*** | means the Debtors in their capacity as debtors in possession in the chapter 11 Cases pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. |
| ***Default*** | means any event of default under the Secured Trust Note existing after the expiration of any applicable cure or notice period. |
| ***DIP Credit Facility*** | means that certain secured, super-priority Note and Security Agreement, as amended from time to time, executed by, between, and among the Debtors and Alamo CRG, LLC. |
| ***DIP Financing Claims*** | means all Claims arising under or relating to the DIP Credit Facility, the interim orders approving the DIP Credit Facility, and the Final DIP Order and all agreements and instruments relating thereto, including, without limitation, Claims for the fees, reasonable and documented expenses, costs and other charges of the lender under the DIP Credit Facility (including those of counsel and advisors) to the extent provided in the DIP Credit Facility. |
| ***DIP Lender*** | means Alamo CRG, LLC, in its capacity as DIP Lender. |
| ***Disclosure Statement*** | means the written disclosure statement that relates to this Plan, as approved by the Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time (including all schedules and exhibits thereto). |
| ***Disputed*** | means, with reference to any Claim, (a) any Claim, (i) proof of which was not timely or properly filed and that has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, or (ii) for which a proof of claim was required, but as to which a proof of claim was not timely or properly filed; or (b) any Claim as to which the Debtors or any other party in interest has filed an objection or request for estimation on or before such limitation period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court, except to the extent that such objection or request for estimation is withdrawn or determined by a Final Order in favor of the holder of such Claim. |
| ***Distributions*** | means the distribution in accordance with this Plan of (a) Cash, (b) new membership interests, or (c) other form of consideration, as the case may be. |
| ***Effective Date*** | means the first Business Day on which all of the conditions specified in Article XIII.B of the Plan have been satisfied or waived in accordance with Article XIII.C of the Plan; provided, however, that if a stay of the Confirmation Order is in effect on such date, the Effective Date will be the first Business Day after such stay is no longer in effect. |

8

| | |
|---|---|
| ***Employee Claims*** | means any Claim by any current or former employee of the Debtors. |
| ***Equity Interest or Interest*** | means any equity security within the meaning of section 101(16) of the Bankruptcy Code or any other instrument evidencing an ownership interest in any of the Debtors, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire, sell or subscribe for any such interest. |
| ***Estates*** | means the estates of the Debtors, individually or collectively, as is appropriate in the context created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code. |
| ***Excluded Administrative Claims*** | has the meaning assigned to such term in Article III.A.1. of the Plan. |
| ***Excluded Causes of Action*** | means causes of action against those certain vendors identified by Debtors to be critical to their operations or who were granted critical vendor status by the Debtors during these Chapter 11 Cases. A list of all critical vendors referenced herein will be included in the Plan Supplement. In any event, the Unsecured Creditors' Trust shall retain the right to assert any Excluded Causes of Action as defenses to, or off sets against, any Claims against or rights to receive distributions from the Unsecured Creditors' Trust. |
| ***Excluded Insider Causes of Action*** | means causes of action against (a) any of the Debtors' current respective officers, directors, employees, partners, advisors, attorneys, financial advisors, accountants, and other professionals, each solely in their capacities as such, or (b) FMP, the DIP Lender, Pre-Petition Secured Creditors' and all of their current officers, directors, principals, members, employees, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and any other professionals of FMP, the DIP Lender and Pre-Petition Secured Creditors', each solely in their capacities as such. For avoidance of doubt, a specific, exhaustive list of all Persons that are potential defendants to any Excluded Insider Causes of Action will be included in the Plan Supplement, and only causes of action against Persons specifically and individually named therein shall be included in the Excluded Insider Causes of Action. In any event, the Unsecured Creditors' Trust shall retain the right to assert any Excluded Insider Causes of Action as defenses to, or off sets against, any Claims against or rights to receive distributions from the Unsecured Creditors' Trust. |

9

| | |
|---|---|
| ***Fee Claims*** | means an Administrative Claim under section 330(a), 331 or 503 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Cases on or prior to the Effective Date (including reasonable expenses of the members of the Creditors' Committee incurred as members of the Creditors' Committee in discharge of their duties as such. |
| ***Fee Claims Escrow*** | has the meaning assigned to such term in Article III.B. of the Plan |
| ***Final Order*** | means an order or judgment of the Court, or other court of competent jurisdiction, as entered on the docket of such Court, the operation or effect of which has not been stayed, reversed, vacated or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending. |
| ***Fire Mountain*** | means Fire Mountain Restaurants, LLC. |
| ***FMP*** | means FMP SA Management Group, LLC. |
| ***FMP Cure Claim*** | means FMP's Cure Claim in connection with the assumption by the Debtors of FMP's Management Agreement. The FMP Cure Claim is approximately $12 million. |
| ***FMP Management Agreement*** | means the Management Agreement between FMP and Buffets, LLC dated August 19, 2015. |
| ***General Unsecured Claim*** | means a Claim against any of the Debtors that is not otherwise classified or dealt with in the Plan. |
| ***Governmental Unit*** | has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code. |
| ***HomeTown*** | means HomeTown Buffet, Inc. |
| ***Impaired*** | means, when used with reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code. |
| ***Indemnification Obligation*** | means any obligation of any of the Debtors to indemnify, reimburse, or provide contribution pursuant to charter, by-laws, contract, or otherwise; provided, however, that such term shall not include any obligation that constitutes a Subordinated Claim or other subordinated obligation. |

10

| | |
|---|---|
| **Initial Distribution Date** | means the date of the first distribution by the Unsecured Creditors' Trustee, Debtors or the Reorganized Debtors as applicable, to a particular class of Creditors'. |
| **Insider** | has the meaning set forth in section 101(31) of the Bankruptcy Code. |
| **Insured Claim** | means any Claim or portion of a Claim, other than Workers' Compensation Claims and Automobile Liability Claims, that is insured under the Debtors' insurance policies, but only to the extent of such coverage. |
| **Intercompany Claims** | means any Claim held by one of the Debtors against any other Debtor, including, without limitation, (a) any account reflecting intercompany book entries by such Debtor with respect to any other Debtor, (b) any Claim not reflected in book entries that is held by such Debtor, and (c) any derivative Claim asserted or which can be asserted by or on behalf of such Debtor against any other Debtor. |
| **Lien** | has the meaning set forth in section 101(37) of the Bankruptcy Code. |
| **OCB Purchasing** | means OCB Purchasing, Co. |
| **OCB Restaurant** | means OCB Restaurant Company, LLC. |
| **Ordinary Course Administrative Claims** | means (1) Administrative Claims against the Debtors that represent liabilities (a) to sellers of goods or services on account of such seller's provision of goods and/or services and (b) that were incurred in the ordinary course of business by the Debtors; or (2) Claims against the Debtors that represent liabilities to taxing authorities that would be properly classified as Administrative Claims. |
| **Other Priority Claim** | means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code (other than Administrative Claims, Property Tax Claims and Priority Tax Claims), including, without limitation, certain allowed employee compensation and benefit claims of the Debtors' employees incurred within one hundred eighty (180) days prior to the Petition Date. |
| **Other Secured Claims** | means any Claim (excluding the Subordinated Claims and the ACE Companies' Claim) to the extent reflected in the Schedules or a proof of claim filed as a Secured Claim, which is secured by a Lien on Collateral) to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff. |

11

| | |
|---|---|
| **PACA Claims** | means all Claims arising under the Perishable Agricultural Commodities Act. |
| **Person** | means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, or any other entity. |
| **Petition Date** | means March 7, 2016. |
| **Plan** | means this Plan, as it may be amended or modified from time to time, together with all addenda, exhibits, schedules or other attachments, if any. |
| **Plan Interest Rate** | means simple interest at the rate of 3% per annum. |
| **Plan Supplement** | means the supplemental appendix to this Plan, to be filed no later than fourteen (14) calendar days prior to the commencement of the Confirmation Hearing, which will contain, among other things, draft forms or signed copies, as the case may be, of the Plan Supplement Documents. |
| **Plan Supplement Documents** | means the documents to be included in the Plan Supplement, including the forms of documents to be executed, delivered, and/or performed in connection with the consummation of this Plan. |
| **Pre-Petition Secured Credit Claim** | means all Claims relating or arising under the Acquisition Debt. |
| **Pre-Petition Secured Creditors'** | means Alamo CRG, LLC, FMP SA Management Group, LLC, All Jones LLC, BPTX Holdings, LLC, Larrac Inv., LLC Series L, and Dayspring Operating Company, LLC, in their capacity as holders of Pre-Petition Secured Credit Claims. |
| **Priority Claim** | means any unsecured Claim that is entitled to a priority in right of payment under section 507 of the Bankruptcy Code, including claims entitled to priority right of payment under section 507(a)(8), Property Tax Claims and Other Priority Claims. |
| **Professional** | means (i) any professional employed in the Chapter 11 Cases pursuant to section 327, 328 or 1103 of the Bankruptcy Code and (ii) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b) of the Bankruptcy Code. |

12

| | |
|---|---|
| **Property Tax Claim** | All property tax claims on real or personal property, owned by the Debtors or, with respect to leased real property, is not attributable to a lease that has been rejected and is attributable to a lease which permits, in general, payment of property taxes over the statutory time provided in the Bankruptcy Code for payment of a property tax claims. |
| **Pro Rata** | means, with respect to any Claim, at any time, the proportion that the amount of a Claim in a particular Class bears to the aggregate amount of all Claims (including Disputed Claims) in such Class, unless in each case the Plan provides otherwise. |
| **Real Property Lease** | means, individually, any unexpired lease of nonresidential real property identified on the Schedule of Additional Assumed Contracts and Leases in the Plan Supplement. |
| **Record Date** | means, (a) for purposes of making distributions under the Plan on account of Allowed Claims, the Confirmation Date, and (b) for purposes of casting Ballots, the date set forth in the order approving the Disclosure Statement that accompanies this Plan. |
| **Release Effective Date** | means the date that is the earlier of (i) the date that is one year following the Effective Date, or (ii) the date on which the Secured Trust Note is paid in full, in each case, so long as there has been no intervening Default (as defined above) as a result of any failure to make any payment as and when due, the filing of any bankruptcy petition, or insolvency of any of the Reorganized Debtors. For the avoidance of doubt, in the event of the occurrence of one or more such Defaults (as defined above), the releases set forth in Article VIII, Sections J and K of the Plan shall not be granted and the Unsecured Creditor Trustee may pursue the Excluded Insider Causes of Action. |
| **Released Parties** | has the meaning assigned to such term in Article VIII of the Plan. |
| **Reorganized Debtors** | means the Debtors, or any successors thereto by merger, consolidation, or otherwise, on and after the Effective Date. |
| **Reorganized Subsidiaries** | means the Subsidiaries, collectively, on or after the Effective Date. |
| **Ryan's Restaurant Group** | means Ryan's Restaurant Group, LLC |
| **Scheduled** | means, with respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest as set forth in the Schedules. |

13

| | |
|---|---|
| ***Schedules*** | means the schedules of assets and liabilities, statements of financial affairs, and lists of holders of Claims and Equity Interests filed with the Court by each of the Debtors, including any amendments or supplements thereto. |
| ***Schedule of Additional Assumed Leases*** | means that certain schedule to be included in the Plan Supplement that specifically designates certain executory contracts and/or unexpired leases as contracts or leases to be assumed pursuant to the Plan. |
| ***Schedule of Additional Rejected Contracts and Leases*** | means that certain schedule to be included in the Plan Supplement that specifically designates certain executory contracts and/or unexpired leases as contracts or leases to be rejected pursuant to the Plan. |
| ***Secured Claim*** | means a Claim to the extent that it is secured, as provided by section 506 of the Bankruptcy Code. |
| ***Secured Trust Note*** | means the promissory note and related loan documents, substantially in the form to be included in the Plan Supplement, to be executed and paid by the Reorganized Debtors in favor of the Unsecured Creditors' Trust in the amount of $5.25 million payable in quarterly payments over two years with interest on the outstanding balance at the rate of 5.5%. All obligations arising under the Secured Trust Note shall be secured by a perfected first-in-priority security interest on all assets of the Reorganized Debtors, including, without limitation, collateral assignments of all real estate leases under which the Debtors or Reorganized Debtors, or any of them, are or become tenants. The Secured Trust Note and related loan documents shall be prepared and negotiated by the Creditors' Committee and in a form acceptable to the Creditors' Committee and Debtors. |
| ***Subsidiaries*** | means Hometown, OCB Purchasing, OCB Restaurant, Ryan's Restaurant Group, Fire Mountain, and Tahoe Joe's, which are direct and indirect subsidiaries of Buffets. |
| ***Subordination Agreement*** | means the Inter-creditor and Subordination Agreement, to be entered into between the Unsecured Creditors' Trust and all holders of the Subordinated Claims, in a form acceptable to the Debtors and the Creditors' Committee. |
| ***Subordinated Claims*** | means the (i) DIP Financing Claim, (ii) the FMP Cure Claim, (iii) the Alamo CRG Secured Claim, (iv) the Pre-Petition Secured Credit Claims, (iv) any other Claims of the Pre-Petition Secured Creditors' and their principals and affiliates, (v) any other Claims of FMP, Alamo CRG, Alamo Ovation, LLC, non-debtor parent companies of the Debtors, and the respective principals and affiliates of any of the foregoing, (vi) Intercompany Claims, and (vii) any obligations relating to the Alamo Buffets Advance. |

14

| | |
|---|---|
| ***Tahoe Joe's*** | means Tahoe Joe's, Inc. |
| ***Trust Advisory Board*** | means the board that is to be created pursuant to Article VIII of this Plan for the purpose of advising the Unsecured Creditors' Trustee with respect to decisions affecting the Unsecured Creditors' Trust. |
| ***Trust Assets*** | means shall have the meaning assigned to such term in Article VII.D.2. of the Plan. |
| ***Trust Causes of Action*** | means the Causes of Action (including the Excluded Insider Causes of Action, but excluding the Excluded Causes of Action), together with rights assigned, transferred granted to the Unsecured Creditors' Trust pursuant to the Assigned Causes of Action Agreement. |
| ***Unsecured Creditors' Trust*** | means the trust to be created on the Effective Date pursuant to the Unsecured Creditors' Trust Agreement. |
| ***Unsecured Creditors' Trust Agreement*** | means the trust agreement to be entered into pursuant to Article VII.D, substantially in the form to be included in the Plan Supplement. Such agreement shall be prepared by the Creditors' Committee, and be in a form acceptable to the Debtors and the Creditors' Committee. |
| ***Unsecured Creditors' Trust Cash Component*** | means the $6.5 million in Cash to be transferred by the Debtors or Reorganized Debtors to the Unsecured Creditors' Trust on the Effective Date, which is to be funded with the proceeds of the Alamo Buffets Advance. |
| ***Unsecured Creditors' Trust Interests*** | means the beneficial interests in the Unsecured Creditors' Trust granted to holders of Allowed General Unsecured Claims, which interests shall entitle the holders, in the aggregate, to the Unsecured Creditors' Trust Proceeds. |
| ***Unsecured Creditors' Trust Proceeds*** | means, net of the expenses of the Unsecured Creditors' Trust, including, without limitation, fees of the Unsecured Creditors' Trustee and its professionals, (i) the Unsecured Creditors' Trust Cash Component, (ii) the net proceeds of the Trust Causes of Action after payment of costs incident to the litigation and (iii) the proceeds of the Secured Trust Note together with any interest or earnings thereon. |
| ***Unsecured Creditors' Trustee*** | means the Person designated in accordance with the Plan and the Unsecured Creditors' Trust Agreement. The identity of the Unsecured Creditors' Trustee shall be disclosed in the Plan Supplement. |
| ***Workers' Compensation Claim*** | means a Claim held by a current or former employee of the Debtors that is covered by workers' compensation insurance. |

15

## B. Interpretation, Application of Definitions and Rules of Construction

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter, such meanings to be applicable to both the singular and plural forms of the terms defined. Capitalized terms in the Plan that are not defined herein shall have the same meanings assigned to such terms by the Bankruptcy Code or Bankruptcy Rules, as the case may be. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section or subsection in the Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only, are not a part of this Plan, and shall not be used to interpret this Plan. Any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. The rules of construction set forth in section 102 of the Bankruptcy Code (except for section 102(5)) shall apply to this Plan. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## II.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

### A. Introduction

All Claims and Equity Interests, except Administrative Claims, and Fee Claims are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Fee Claims, as described below, have not been classified.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

1. **Unclassified Claims (not entitled to vote on the Plan)**

        (a)     Administrative Claims.

        (b)     Fee Claims.

2. **Classes of Claims**

    (a)    <u>Class 1:</u> Priority Claims.

    (b)    <u>Class 2:</u> Other Secured Claims.

    (c)    <u>Class 3:</u> Allowed PACA Claims.

    (d)    <u>Class 4:</u> General Unsecured Claims.

    (e)    <u>Class 5:</u> Convenience Claims.

    (f)    <u>Class 6:</u> Subordinated Claims.

    (g)    <u>Class 7:</u> ACE Companies' Claim.

    (h)    <u>Class 8:</u> Equity Interests in Buffets.

## III.

## TREATMENT OF UNCLASSIFIED CLAIMS

### A. Administrative Claims

Unless otherwise provided herein, each holder of an Allowed Administrative Claim shall receive from the Debtors (a) Cash in an amount equal to the amount of such Allowed Administrative Claim on the later of the Effective Date and the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, or (b) such other treatment as the Debtors and such holder shall have agreed upon in writing; provided, however, that Allowed Ordinary Course Administrative Claims shall be paid in full in the ordinary course of business of the Reorganized Debtors in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

### 1. Bar Dates for Administrative Claims

Unless a prior date has been established pursuant to the Bankruptcy Code, the Bankruptcy Rules or a prior order of the Court, the Confirmation Order will establish a bar date for filing applications for allowance of Administrative Claims (except for (i) Fee Claims, including Claims for expenses by members of the Creditors' Committee related to the performance of their duties on the Creditors' Committee, and (ii) Ordinary Course Administrative Claims (collectively (i) - (ii) shall hereinafter be referred to as the "Excluded Administrative Claims"), which date will be the first business day that is thirty (30) days after the Confirmation Date. Holders of Administrative Claims, except Excluded Administrative Claims, not paid prior to the Confirmation Date shall submit requests for payment on or before the applicable Administrative Claims Bar Date or forever be barred from doing so. The notice of confirmation to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set forth the Administrative Claims Bar Date and constitute good and sufficient notice of the Administrative

17

Claims Bar Date. The Reorganized Debtors shall have 120 days (or such longer period as may be allowed by order of the Court, which may be entered without notice or a hearing) following the Administrative Claims Bar Date to review and object to all Administrative Claims.

## B. Fee Claims

All requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the Reorganized Debtors, counsel to the Reorganized Debtors, the United States Trustee, and counsel to the Creditors' Committee and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than thirty (30) days after the Effective Date. Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors, Reorganized Debtors or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and served on the Reorganized Debtors, counsel for the Reorganized Debtors, and the requesting party no later than seventy-five (75) days after the Effective Date. The Allowed Fee Claims are to be paid in full in Cash within three (3) business days of the Final Order allowing such Claims.

On or before the Effective Date, the Debtors shall place in escrow with Debtors' counsel both funds sufficient to pay all allowed but unpaid Fee Claims, as well as reasonably estimated amounts necessary to pay known and/or anticipated Fee Claims which have not yet been Allowed (the "Fee Claims Escrow"), except to the extent that the holder of such a Fee Claim executes and written waiver of such escrow requirement.

## C. Substantial Contribution Claim of Value Extraction Services

Value Extraction Services, LLC ("VES") shall have an Allowed Administrative Claim for substantial contribution in the amount of $25,000 to reimburse VES and its client Mistral Equity Partners for time and expenses incurred in making a substantial contribution, as contemplated in Section 503(b)(3)(D) of the Bankruptcy Code, in the Debtors' cases. The VES substantial contribution claim shall be paid from the Trust Assets following funding to the Unsecured Creditors' Trust of the Unsecured Creditors' Trust Cash Component.

# IV.

# TREATMENT OF CLAIMS AND
# EQUITY INTERESTS

## A. Class 1 – Priority Claims

### 1. Distributions

Except to the extent that a holder of an Allowed Priority Claim shall have agreed in writing to a different treatment, the holder of an Allowed Priority Claim will be paid in quarterly Cash installments, commencing on the first day of the first month following the Effective Date, over a period of five years, with interest at the Plan Interest Rate, except that if a holder of an

18

Allowed Priority Claim that is also a Claim for taxes notifies the Debtor before the Confirmation Date that applicable non-bankruptcy law entitles it to a rate of interest higher than the Plan Interest Rate then such holder shall be paid interest at a rate in accordance with applicable non-bankruptcy law. A list of such holders shall be included in the Confirmation Order. Holders of Allowed Priority Claims shall retain any liens that have arisen or may arise under applicable non-bankruptcy law.

### 2.    Impairment and Voting

Class 1 is impaired under the Plan. Holders of Allowed Priority Tax Claims in Class 1 are entitled to vote to accept or reject the Plan.

### B.    Class 2 – Other Secured Claims

### 1.    Distributions

Except to the extent that a holder of an Allowed Other Secured Claim shall have agreed in writing to a different treatment, at the sole option of the Debtors, each Allowed Other Secured Claim shall, in full and final satisfaction of such Claim:

> (i) be reinstated and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder of an Allowed Other Secured Claim to demand or receive payment of such Allowed Other Secured Claim prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of a default;

> (ii) receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, by the later of thirty (30) days after the Effective Date or after a Final Order allowing such Claims; or

> (iii) receive the Collateral securing its Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code by the later of thirty (30) days after the Effective Date or three (3) business days after a Final Order allowing such Claims.

Notwithstanding the foregoing, to the extent an Allowed Other Secured Claim arises on account of property taxes, such Allowed Other Secured Claim shall be treated as Property Tax Claims.

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different than that securing other Other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving Distributions under the Plan.

19

### 2. Impairment and Voting

Class 2 is unimpaired under the Plan. The holders of Allowed Other Secured Claims in Class 2 are presumed to accept the Plan and are not entitled to vote to accept or reject the Plan.

## C. Class 3 – Allowed PACA Claims

### 1. Distributions

Except to the extent that a holder of an Allowed PACA Claim shall have agreed in writing to a different treatment, each Allowed PACA claim shall be paid in full in Cash by the later of thirty (30) days after the Effective Date or three (3) business days after a Final Order allowing such Claims.

### 2. Impairment and Voting

Class 3 is unimpaired under the Plan. Each holder of an Allowed PACA Claim in Class 5 is entitled to vote to accept or reject the Plan.

## D. Class 4 – General Unsecured Claims

### 1. Distributions

Except to the extent that a holder of an Allowed General Unsecured Claim shall have agreed in writing to a different treatment, each holder of an Allowed General Unsecured Claim in Class 4 shall be deemed to receive its *pro rata* share of the Unsecured Creditors' Trust Interests. The Unsecured Creditors' Trust Interests shall entitle the holders of Allowed General Unsecured Claims to receive, on such date or dates determined in accordance with the Unsecured Creditors' Trust Agreement, their *pro rata* share of the Unsecured Creditors' Trust Proceeds. Under no circumstances shall any holder of an Allowed General Unsecured Claim receive more than payment in full of such Claim.

### 2. Impairment and Voting

Class 4 is impaired under the Plan. Each holder of an Allowed General Unsecured Claim in Class 4 is entitled to vote to accept or reject the Plan.

## E. Class 5 – Convenience Claims

### 1. Distributions

Each holder of an Allowed Convenience Claim shall receive, in full and final satisfaction of such Claim, either a distribution in Cash equal to ten percent (10%) of such holder's Allowed Convenience Claim or such holder's *pro rata* share of a maximum combined distribution in the amount of $425,000 to be funded out of the Unsecured Creditors' Trust proceeds to holders Convenience Claims, whichever is less, on the Initial Distribution Date for the Unsecured Creditors' Trust. Any portion of the $425,000 remaining after distributions on account of Class 5 Claims shall be applied to fund distributions on account of Class 4 Claims.

20

In order to share in a distribution a Convenience Claim needs to be an Allowed Claim as of the date of distribution to the Convenience Claims Class. To the extent a Convenience Claim is not an Allowed Claim as of the Initial Distribution Date for Convenience Claims said Claim will be treated as a General Unsecured Claim.

### 2. Impairment and Voting

Class 5 is impaired under the Plan. Each holder of an Allowed Convenience Claim in Class 5 is entitled to vote to accept or reject the Plan.

### F. Class 6 – Subordinated Claims

#### 1. Distributions

Holders of Subordinated Claims shall receive no distribution under the Plan until all payments required under the Plan (including, without limitation, all payments under the Secured Trust Note) have been made. Upon all payments under the Plan being made, the Holders of the Subordinated Claims and the Debtors will mutually agree to repayment terms. Holders of Subordinated Claims shall have no Claims against, and no rights to receive any distributions from, the Unsecured Creditors' Trust.

The Subordinated Claims will remain as debt on the respective Debtor's books and records, to the extent provided by their individual terms. Holders of the Subordinated Claims will retain any liens securing their claims and said liens will be subordinated to the Secured Trust Note, as well as obligations to and liens granted in favor of the Unsecured Creditors' Trust. Any liens retained by holders of Subordinated Claims are not enforceable against the Reorganized Debtors until all payments required under the Plan have been made and repayment terms negotiated with the Debtors.

### 2. Impairment and Voting

Class 6 is impaired under the Plan. Holders of Class 6 Claims are entitled to vote on the Plan.

### G. Class 7 – ACE Companies' Claim

#### 1) Distributions

The ACE Companies' Claim shall be satisfied as provided for in Article VII(I)(3).

#### 2) Impairment and Voting

21

Class 7 is impaired under the Plan. Holders of Class 7 Claims are entitled to vote on the Plan.

### H. Class 8 – Equity Interests

#### 1. Distributions

Existing Equity Interests in Buffets LLC shall be cancelled.

#### 2. Impairment and Voting

Class 8 is impaired under the Plan. Holders of Equity Interests in Buffets are presumed to reject the Plan and are not entitled to vote to accept or reject the Plan.

## V.

## PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE REORGANIZED DEBTORS

### A. Amendments to Certificates of Incorporation

On the Effective Date, or as soon thereafter as is practicable, the certificate of incorporation for each Debtor shall be amended if and as necessary to permit any other corporate action necessary to implement this Plan. An organization chart reflecting the Reorganized Debtors corporate structure will be included in the Plan Supplement.

### B. Management

#### 1. Appointment of Officers and Directors

The Debtors' current officers shall serve in the same capacity as officers of the Reorganized Debtors and shall serve in accordance with any applicable non-bankruptcy law.

2. **Powers of Officers** The officers of the Debtors or the Reorganized Debtors, as the case may be, shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

3. **Management of Reorganized Debtors** The Reorganized Debtors' officers shall serve in accordance with the Reorganized Debtors and applicable non-bankruptcy law.

4. **Indemnification of Directors, Officers and Employees** Upon the Effective Date, the charters and by-laws of each Reorganized Debtors shall contain provisions which (i) eliminate the personal liability of the Debtors' and the Reorganized Debtors' then-present and future, directors, managers and officers for post-Effective Date monetary damages resulting from breaches of their fiduciary duties to the fullest extent permitted by applicable law in the state in which the subject Reorganized Debtor is organized; and (ii) require such Reorganized Debtor, subject to appropriate procedures, to indemnify the Reorganized Debtors'

22

directors, officers, and other employees serving on or after the Effective Date for all post-Effective Date claims and actions to the fullest extent permitted by applicable law in the state in which the subject Reorganized Debtor is organized.

### 5. **Management**

After the Effective Date, TX FMP Management LLC ("TX FMP") shall commence management of the Reorganized Debtors pursuant to a management agreement that shall have identical terms as and provide for the same management fee as provided for in the FMP Management Agreement. TX FMP shall be entitled to receive management fees for post-Effective Date management services as currently provided for in the FMP Management Agreement; provided, however, that, unless and until the Secured Trust Note is satisfied in full, the TX FMP Management Agreement may not be amended and the calculation of management fees shall not be altered without the written consent of the Unsecured Creditors' Trustee, and further provided that, in the event of a Default under the Secured Trust Note, no unpaid pre-Default management fees shall be paid.

### 6. **New Equity**

New membership interests reflecting 100% of the ownership in Buffets LLC shall be issued to Alamo Buffets LLC.

### C. **Corporate Action**

Except as set forth in the Plan, any action under the Plan to be taken by or required of the Debtors or the Reorganized Debtors, including, without limitation, the adoption or amendment of certificates of incorporation and by-laws, the issuance of securities and instruments or the selection of officers or directors, shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors' or Reorganized Debtors' boards of directors or managers, as applicable, or security holders.

The Debtors, the Reorganized Debtors, and the Unsecured Creditors' Trustee, as appropriate, shall be authorized to execute, deliver, file, and record such documents (including the Plan Supplement Documents), contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, without the necessity of any further Court, corporate, or member approval or action. In addition, the selection of the Persons who will serve as the initial directors, officers and managers of the Reorganized Debtors as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by managers, members or the applicable Reorganized Debtor.

### VI.

### SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

Solely in connection with Distributions to be made to the holders of Allowed Claims, the Plan is predicated upon, and it is a condition precedent to confirmation of the Plan, that the Court provide in the Confirmation Order for the substantive consolidation of the Estates of the Debtors

23

into a single Estate for purposes of this Plan and the Distributions hereunder. To the extent a Claim (including any Disputed Claim) becomes an Allowed Claim, such Claim shall be satisfied in accordance with the provisions of the Plan.

Pursuant to the Confirmation Order, upon the Effective Date and without further order of the Court, except as expressly provided herein, (i) all assets and liabilities of the substantively consolidated Debtors will be deemed to be merged solely for purposes of this Plan and Distributions to be made hereunder, (ii) the obligations of each Debtor will be deemed to be the obligation of the substantively consolidated Debtors solely for purposes of this Plan and Distributions hereunder, (iii) any Claims filed or to be filed in connection with any such obligations will be deemed Claims against the substantively consolidated Debtors, (iv) each Claim filed in the Chapter 11 Case of any Debtor will be deemed filed against the Debtors in the consolidated Chapter 11 Cases in accordance with the substantive consolidation of the assets and liabilities of the Debtors, (v) all transfers, disbursements and distributions made by any Debtor hereunder will be deemed to be made by the substantively consolidated Debtors, and (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the substantively consolidated Debtors. Holders of Allowed Claims in each Class shall be entitled to their share of assets available for distribution to such Class without regard to which Debtor was originally liable for such Claim. Notwithstanding the foregoing, such substantive consolidation shall not affect (a) the legal and corporate structure of the Reorganized Debtors, (b) guarantees that are required to be maintained post-Effective Date in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been, or will hereunder be, assumed, or pursuant to the express terms of the Plan. The substantive consolidation proposed herein shall not affect each Debtor's obligation to file the necessary operating reports and pay any required fees pursuant to 28 U.S.C. § 1930(a)(6). Such obligations shall continue until an order is entered closing, dismissing or converting each such Debtor's Chapter 11 Case.

Unless the Court has approved the substantive consolidation of the Estates by a prior order, the Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Estates as set forth in this Plan. If no objection to substantive consolidation under this Plan is timely filed and served, then the holders of Claims will be deemed to have consented to substantive consolidation for the purpose of this Plan only and the Court may approve substantive consolidation of the Debtors' Estates in the Confirmation Order. If such objection to the substantive consolidation provided for in this Plan is timely filed and served, a hearing with respect to the substantive consolidation of the Estates and the objections thereto shall be scheduled by the Court, which hearing may coincide with the Confirmation Hearing.

24

# VII.

## PROVISIONS REGARDING MEANS OF IMPLEMENTATION, VOTING, DISTRIBUTIONS, AND TREATMENT OF DISPUTED CLAIMS

### A.    Funding the Unsecured Creditors' Trust

Funding of the Unsecured Creditors' Trust shall be as follows:

> (i) Alamo Buffets, LLC shall provide $6.5 million in cash to the Debtors, *i.e.*, the Alamo Buffets Advance, in order to fund the Unsecured Creditors' Trust Cash Component, which shall be transferred to the Unsecured Creditors' Trust on or before the Effective Date;

> (ii) the Reorganized Debtors shall each execute the Secured Trust Note; and

> (iii) the Trust Causes of Action, including the Causes of Action and rights under the Assigned Causes of Action Agreement, shall be transferred to the Unsecured Creditors' Trust.

### B.    Payment of Claims

The Debtors or Reorganized Debtors shall pay all Allowed unclassified Claims and Allowed Claims other than Allowed Claims in Classes 4 and 5. The Unsecured Creditors' Trust shall be responsible solely for distributions on account of Allowed Class 4 and 5 Claims in accordance with the terms of Unsecured Creditors' Trust Agreement.

### C.    Restructuring Transactions

On or before the Effective Date, the Debtors may, provided (i) there are no material adverse tax consequences to the Debtors, (ii) no material adverse consequences to holders of General Unsecured Claims, and does not substitute a tenant under an assumed lease (1) cause any or all of the Debtors to be merged into one or more of the Debtors, dissolved, or otherwise consolidated, (2) cause the transfer of assets between and among the Debtors, (3) convert or change the corporate form of any Debtor, or (4) engage in any other transaction in furtherance of the Plan. Any such transactions shall be disclosed in the Plan Summary and shall be effective pursuant to the Confirmation Order without any further action by the stockholders or directors of any of the Debtors.

### D.    Unsecured Creditors' Trust

The Unsecured Creditors' Trust Agreement shall become effective on the Effective Date. In accordance with the Unsecured Creditors' Trust Agreement, the Unsecured Creditors' Trust shall be administered by the Unsecured Creditors' Trustee, who shall be designated by the Creditors' Committee. Subject to the Unsecured Creditors' Trust Agreement, the Unsecured Creditors' Trustee shall serve from and after the Effective Date until completion of its responsibilities. This Section VII.D. sets forth certain of the rights, duties and obligations of the Unsecured Creditors' Trustee and the terms of the Unsecured Creditors' Trust, all of which will

25

be more fully described in the Unsecured Creditors' Trust Agreement. In the event of any conflict between the terms of this Section VII.D. and the terms of the Unsecured Creditors' Trust Agreement, the terms of the Unsecured Creditors' Trust Agreement shall govern.

### 1. Duties and Powers of the Unsecured Creditors' Trust and Unsecured Creditors' Trustee

The Unsecured Creditors' Trust shall be established solely for the purposes provided for in the Unsecured Creditors' Trust Agreement, which shall include (i) administering, maintaining and ultimately distributing the Unsecured Creditors' Trust Proceeds in accordance with the Plan, (ii) providing for the prosecution, collection, compromise and settlement of the Trust Causes of Action and (iii) determining, objecting to and resolving objections to unliquidated and Disputed General Unsecured Claims. Such rights, powers and duties granted to the Unsecured Creditors' Trustee shall vest on the Effective Date without the need to obtain further Court approval. The Unsecured Creditors' Trustee, in its discretion and in consultation with the Trust Advisory Board, may settle any Disputed General Unsecured Claim by providing the holder of such Claim an immediate Cash Distribution on the Allowed amount of such Claim up to the proximate estimated amount of the projected Distribution to holders of Allowed General Unsecured Claims without further order of the Court. The Unsecured Creditors' Trustee shall pursue, litigate, compromise or abandon the Trust Causes of Action with the objective of maximizing the return to holders of Allowed General Unsecured Claims, in accordance with the Unsecured Creditors' Trust Agreement, and pay all associated costs. The Unsecured Creditors' Trustee shall not effectuate any Distribution to a holder of an Allowed Claim if the holder of the Allowed Claim is also the subject of one or more Avoidance Actions that have not been satisfied, abandoned, or subject to judgment solely in such Claimant's favor. None of the Debtors or the Reorganized Debtors shall have any liability for any cost or expense of the Unsecured Creditors' Trust following the Effective Date. The Unsecured Creditors' Trustee shall distribute the Unsecured Creditors' Trust Proceeds in accordance with the Unsecured Creditors' Trust Agreement and the terms of the Plan.

### 2. Transfers to the Unsecured Creditors' Trust

On and after (as applicable) the Effective Date, the Debtors (or, in the case of the Assigned Non-Debtor Causes of Action, the holders thereof) shall transfer, assign, deliver and distribute to the Unsecured Creditors' Trust all right, title and interest in the (i) Causes of Action, (ii) Assigned Non-Debtor Causes of Action, (iii) the Unsecured Creditors' Trust Cash Component, (iv) the Secured Trust Note and (v) all documents necessary to create and perfect the security interests to be granted to the Unsecured Creditors' Trust on all assets of the Reorganized Debtors, including, without limitation, collateral assignments of all real estate leases under which one or more of the Reorganized Debtors are or become tenants (collectively, the "Trust Assets"). For the avoidance of doubt, the Excluded Causes of Action will not be transferred to the Unsecured Creditors' Trust and will not be considered Trust Assets. Subject to the terms of the Plan and the Unsecured Creditors' Trust Agreement, the Unsecured Creditors' Trust and the Unsecured Creditors' Trustee shall, on the Effective Date, be vested with and succeed to all rights, privileges, immunities, title and interest of the Debtors in and to the Trust Assets, and the Debtors and the Reorganized Debtors shall have no other further rights or obligations with respect thereto, except as set forth in the Plan and any ancillary agreements

26

executed in connection with the Plan. In addition, on the Effective Date, the Unsecured Creditors' Trust and the Unsecured Creditors' Trustee shall be vested with and succeed to all of the applicable Debtor's rights of setoff, credits, credit balances, defenses, and any right with respect to the adjustment to General Unsecured Claims but only to the extent such rights (i) existed as of or related to the period prior to the Petition Date, and (ii) do not exceed the Allowed amount of the applicable General Unsecured Claim. Notwithstanding the foregoing, the Reorganized Debtors shall make available to the Unsecured Creditors' Trustee (subject to appropriate confidentiality and privilege arrangements) reasonable access during normal business hours, upon reasonable notice, to personnel and books and records of the Reorganized Debtors to enable the Unsecured Creditors' Trustee to perform the Unsecured Creditors' Trustee's tasks under the Unsecured Creditors' Trust Agreement and the Plan, and the Debtors and the Reorganized Debtors shall permit the Unsecured Creditors' Trustee (subject to appropriate confidentiality and privilege arrangements) reasonable access to information related to the Trust Causes of Action and the unliquidated and Disputed General Unsecured Claims that is reasonably requested by the Unsecured Creditors' Trust, as more specifically set forth in the Unsecured Creditors' Trust Agreement. With respect to the Insured Claims, the Reorganized Debtors shall also make available to the Unsecured Creditors' Trustee reasonable access and cooperation during normal business hours to personnel responsible for administering the Claims, in addition to access to books and records of the Debtors or the Reorganized Debtors, including any incident files or other documents related to the Insured Claims. The Unsecured Creditors' Trustee shall also have the authority (subject to the Debtors' insurance policies) to work directly with the Debtors' insurers, claims adjusters, third party administrators and agents with respect to the reconciliation, allowance, settlement, and/or prosecution of the Insured Claims and the Reorganized Debtors will reasonably cooperate with the Unsecured Creditors' Trustee to assist with such efforts. Notwithstanding anything to the contrary herein, the Reorganized Debtors will not be required to incur any expenses in discharging its commitments set forth in this paragraph. Interests in the Unsecured Creditors' Trust shall be uncertificated and shall be non-transferable except upon death of the interest holder or by operation of law or with consent of the Unsecured Creditors' Trustee upon such terms as the Unsecured Creditors' Trustee, in its sole and absolute discretion, might require.

### 3. Funding of Unsecured Creditors' Trust Expenses

The expenses of the Unsecured Creditors' Trust, including the fees of the Unsecured Creditors' Trustee, shall be funded from the Trust Assets, and, shall not be funded by the Debtors or the Reorganized Debtors.

### 4. Retention of Professionals by the Unsecured Creditors' Trust

The Unsecured Creditors' Trustee may retain counsel and other professionals to assist in its duties, on such terms as the Unsecured Creditors' Trustee deems appropriate, without Court approval and may pay such professionals reasonable fees and expenses without Court approval.

27

## 5. Termination of Unsecured Creditors' Trust

Upon the final distribution of any and all Unsecured Creditors' Trust Proceeds, and completion of the Unsecured Creditors' Trustee's responsibilities, the Unsecured Creditors' Trustee shall be relieved of further responsibility.

## E. The Trust Advisory Board

1. Subject to the provisions of the Unsecured Creditors' Trust Agreement, the Trust Advisory Board shall be comprised of up to three (3) members which shall be designated by the Creditors' Committee. The Unsecured Creditors' Trustee shall consult regularly with the Trust Advisory Board when carrying out the purpose and intent of the Unsecured Creditors' Trust. Members of the Trust Advisory Board shall be entitled to reimbursement of the reasonable and necessary expenses incurred by them in carrying out the purpose of the Trust Advisory Board, which shall be payable by the Unsecured Creditors' Trust.

2. In the case of an inability or unwillingness of any member of the Trust Advisory Board to serve, such member may be replaced by designation of the remaining members of the Trust Advisory Board.

3. Upon the distribution of the Unsecured Creditors' Trust Proceeds, and the completion of the Unsecured Creditors' Trustee's responsibilities, the members of the Trust Advisory Board shall be deemed to resign their positions, whereupon they shall be discharged from further duties and responsibilities.

4. The Trust Advisory Board may remove the Unsecured Creditors' Trustee in its discretion. In the event the requisite approval necessitated by the Unsecured Creditors' Trust Agreement or documents related thereto is not obtained, the Unsecured Creditors' Trustee may be removed by the Court for cause shown. In the event of the resignation or removal of the Unsecured Creditors' Trustee, the Trust Advisory Board shall, by majority vote, designate a person to serve as successor Unsecured Creditors' Trustee. The identity of any successor Unsecured Creditors' Trustee shall be promptly disclosed in a filing with the Court.

5. Notwithstanding anything to the contrary in the Plan, neither the Trust Advisory Board nor any of its members, designees, counsel, financial advisors or any duly designated agent or representatives of any such party shall be liable for the act, default or misconduct of any other member of the Trust Advisory Board, nor shall any member be liable for anything other than such members' own gross negligence or willful misconduct. The Trust Advisory Board may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its counsel, accountants or other professionals, and shall not be liable for anything done or omitted or suffered to be done in accordance with such advice or opinions. If the Trust Advisory Board determines not to consult with counsel, accountants or other professionals, such action or omission shall not be deemed to impose any liability on the Trust Advisory Board, or its members and/or designees.

6. The Trust Advisory Board shall govern its proceedings through the adoption of bylaws, which the Trust Advisory Board shall adopt by majority vote.

28

## F.    Voting of Claims

Each holder of an Allowed Claim in an Impaired Class of Claims entitled to vote on the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Court.

## G.    Distributions

### 1.    Allowed Claims

(i)    Delivery of Distributions. Distributions under the Plan shall be made by the Reorganized Debtors or their designee or the Unsecured Creditors' Trustee, as applicable, to the holders of Allowed Claims in all Classes at the addresses set forth on the Schedules, unless such addresses are superseded by proofs of claim or transfers of claim filed pursuant to Bankruptcy Rule 3001 by the Record Date (or at the last known addresses of such holders if the Debtors, the Reorganized Debtors, or the Unsecured Creditors' Trustee, as applicable, have been notified in writing of a change of address).

(ii)    Distribution of Cash. Any payment of Cash by the Reorganized Debtors or the Unsecured Creditors' Trustee pursuant to the Plan shall be made at the option and in the sole discretion of the Reorganized Debtors or Unsecured Creditors' Trustee, as applicable, by (i) a check drawn on, or (ii) wire transfer from, a domestic bank selected by the Reorganized Debtors or Unsecured Creditors' Trustee, as applicable. The Unsecured Creditors' Trustee shall be responsible for payments to Classes 10 and 11. The Debtors or Reorganized Debtor shall make all other distributions required in the Plan.

(iii)    Unclaimed Distributions of Cash. Any distribution of Cash under the Plan that is unclaimed after six months after it has been delivered (or attempted to be delivered) shall become the property of the Reorganized Debtor or the Unsecured Creditors' Trustee, as applicable, against which such Claim was Allowed notwithstanding any state or other escheat or similar laws to the contrary, and the entitlement by the holder such unclaimed Allowed Claim to such distribution or any subsequent distribution on account of such Allowed Claim shall be extinguished and forever barred.

(iv)    Saturdays, Sundays, or Legal Holidays. If any payment, distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and shall be deemed to have been completed as of the required date.

(v)    De Minimis Distributions.

The Debtors or the Reorganized Debtors or the Unsecured Creditors' Trustee, as the case may be, shall not be required to, but may in their sole and absolute discretion, make distributions to any holder of a Claim of Cash in an amount less than $10. In addition, the Debtors and the Reorganized Debtors or Unsecured Creditors' Trustee shall not be required to, but may in their

29

sole and absolute discretion, make any payment on account of any Claim in the event that the costs of making such payment exceeds the amount of such payment.

(vi)   *Distributions as of the Record Date.* As of the close of business on the Record Date, the claims register (for Claims) and transfer ledger (for Equity Interests) shall be closed, and there shall be no further changes in the record holders of any Claims or Equity Interests. The Debtors, the Reorganized Debtors and the Unsecured Creditors' Trustee shall have no obligation to, but may in their sole and absolute discretion, recognize any transfer of any Claims or Equity Interests occurring after the Record Date. The Debtors, the Reorganized Debtors and the Unsecured Creditors' Trustee shall instead be entitled to recognize and deal for purposes under the Plan with only those record holders stated on the claims register (for Claims) and transfer ledgers (for Equity Interests) as of the close of business on the Record Date.

(vii)   *Interest on Claims.* Except as specifically provided for in the, no Claims, Allowed or otherwise, shall be entitled, under any circumstances, to receive any interest on a Claim.

## H.   Objections To And Resolution Of Claims

The Reorganized Debtors shall have the exclusive right to make and to file objections to, or otherwise contest the allowance of all claims, other than as provided in this paragraph H. or elsewhere in the Plan.  The Unsecured Creditors' Trustee shall have the exclusive right to make and file objections to Claims in Classes 4 and 5.  Both the Reorganized Debtors and Unsecured Creditors' Trustee shall have the right to make and to file objections to, or otherwise contest the allowance or secured status of Class 7 Claims (*i.e.,* the ACE Companies' Claim) and any Claim that is asserted to be a Secured Claim pursuant to Section 506 of the Bankruptcy Code.  Unless otherwise ordered by the Court, objections to, or other proceedings concerning the allowance of, Administrative Claims and Claims shall be filed and served upon the holders of the Administrative Claims or Claims as to which the objection is made, or otherwise commenced, as the case may be, as soon as practicable, but in no event later than the Claims Objection Deadline. Objections to Fee Claims shall be filed and served within seventy-five (75) days of the Effective Date (or such longer period as may be allowed by order of the Court).

Objections to, or other proceedings contesting the allowance of, Administrative Claims and Claims may be litigated to judgment, settled or withdrawn, in the sole discretion of the Reorganized Debtors or the Unsecured Creditors' Trustee, as applicable. The Debtors or the Unsecured Creditors' Trustee, as appropriate, may settle any such objections or proceedings without Court approval or may seek Court approval without notice to any Person.

Unless an order of the Court specifically provides for a later date, any party filing a proof of Claim (other than an amendment to a timely filed Proof of Claim) after the bar date established by the Court for such Claim shall not be entitled to treatment as a creditor with respect to such Claim for the purposes of voting on and distribution under the Plan unless and until the party filing such Claim either obtains the written consent of the Reorganized Debtors or the Unsecured Creditors' Trustee, as appropriate, to file such Claim late or obtains an order of the Court upon written motion on notice to the Reorganized Debtors or the Unsecured Creditors'

Trustee, as appropriate, that permits the filing of the Claim. In the event any proof of Claim is permitted to be filed after the Claims Objection Deadline, the Reorganized Debtors or the Unsecured Creditors' Trustee, as appropriate, shall have ninety (90) days from the date of such order or agreement to object to such Claim, which deadline may be extended by the Court on motion of the Reorganized Debtors or the Unsecured Creditors' Trustee, as appropriate, without a hearing or notice to Creditors'.

## I.     Special Provisions Regarding Insured Claims

### 1.     Distributions on Insured Claims

Distributions under the Plan to each holder of an Insured Claim that is also a General Unsecured Claim shall be in accordance with the treatment provided under the Plan for General Unsecured Claims; *provided, however,* that

(i)     to the extent a holder has an Allowed Insured Claim, all or a portion of which is within the applicable self-insured retention or deductible (of the relevant insurance policy of the Debtors, then such holder shall have an Allowed General Unsecured Claim for the amount which is within the applicable self-insured retention or deductible of the relevant insurance policy of the Debtors;

(ii)     to the extent a holder has an Allowed Insured Claim, a portion of which exceeds the limits of coverage available from the relevant insurance policies of the Debtors, such holder shall have an Allowed General Unsecured Claim in the amount by which such Allowed Insured Claim exceeds the limits of coverage available from the Debtors' relevant insurance policies;

(iii)     any final settlement of or judgment on account of an Allowed Insured Claim, all or a portion of which is within the applicable self-insured retention or deductible of the relevant insurance policy of the Debtors, shall be satisfied first by the application of the full amount of Debtors' self-insured retention or deductible under the relevant insurance policy, as though such self-insured retention or deductible were paid in full dollar for dollar (up to the amount of the settlement or judgment), even though the self-insured retention or deductible may be satisfied by way of a *pro rata* Distribution under the Plan in a lesser amount, and regardless of the value of such Distribution under the Plan;

(iv)     the Debtors' insurers shall have no duty or obligation to pay any amount within the self-insured retention or deductible of any insurance policy of the Debtors except as may be required by law;

(v)     to the extent the Debtors, the Unsecured Creditors' Trust and/or the Debtors' insurers have an obligation to satisfy any Insured Claim, in whole or in part, in accordance with the Plan, an applicable general liability policy or applicable law, each Allowed Insured Claim shall be adjusted, settled and/or paid by the Debtors' insurers in accordance with the terms of the applicable insurance policies of the Debtors, subject to the terms, conditions, self-insured retentions or deductibles and limits of such policies and subject to the Plan;

31

(vi)     nothing in this section shall constitute a waiver of any claims or causes of action the Debtors or the Unsecured Creditors' Trustee, as applicable, may hold against any Person, including the Debtors' insurance carriers or a waiver of any rights, claims and defenses the insurers may have. Nothing in this section is intended to, shall, or shall be deemed to preclude any holder of an Allowed Insured Claim from seeking and/or obtaining a distribution or other recovery from any insurer of the Debtors in addition to (but not in duplication of) any distribution such holder may receive under the Plan or to preclude any insurer from contesting or asserting defenses to the claims of such holders. The Debtors and the Unsecured Creditors' Trustee, as applicable, do not waive, and expressly reserve their rights to assert that any insurance policy proceeds are property of the Estates to which they are entitled and the insurers expressly reserve their rights to contest or assert defenses to any such assertion by the Debtors. Nothing in the Disclosure Statement, Plan, or Confirmation Order shall be construed as, or is, a determination as to coverage in connection with any Insured Claim under any applicable insurance policy; and

(vii)     subject to the provisions of Article VII(I)(i)-(iv), each Automobile Liability Claim or Workers' Compensation Claim shall be adjusted, settled and/or paid by the Debtors' insurers in the ordinary course in accordance with the terms of the applicable insurance policies of the Debtors, subject to the terms, conditions and limits of such policies without the need or requirement for the claimant, the insurer or third party administrator to seek relief from the automatic stay or Plan injunction to the extent applicable.

(viii)     none of the Disclosure Statement, Plan, or Confirmation Order shall: (a) modify the coverage provided under the Debtors' current, unexpired insurance policies, (b) except as provided for in the Plan, alter in any way the rights and obligations of the Debtors' insurers under their policies, or (c) except as provided in the Plan, alter in any way the rights and obligations of the Debtors (or after the Effective Date, the Reorganized Debtors) or the Unsecured Creditors' Trustee, as applicable, under the insurance policies, including, without limitation, any duty of the Debtors or the Unsecured Creditors' Trustee, as applicable, to defend, at their own expense, against claims asserted under the insurance policies. The Debtors' insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest and/or litigate with any party, including the Debtors (or after the Effective Date, the Reorganized Debtors) and the Unsecured Creditors' Trustee, as applicable, the existence, primacy, and/or scope of available coverage under any alleged applicable policy. Nothing in the Disclosure Statement, Plan or Confirmation Order in any way permits any holder of an Insured Claim to recover the same amounts from the insurers and any other party including, but not limited to, the Debtors or the Reorganized Debtors, or the Unsecured Creditors' Trustee. Nothing in the Disclosure Statement, Plan, or Confirmation Order shall modify the rights of the Debtors' insurers with respect to the maintenance or use of any letters of credit, or other collateral and security provided to them, in connection with liabilities arising under the applicable insurance agreements.

## 2.     **Large Deductible Policies**

The Debtor has been insured under pre-petition large deductible workers' compensation, automobile and general liability policies. Any and all ongoing obligations of the Debtors with respect to such policies that have expired are rejected pursuant to Section 365 as to the

32

Reorganized Debtors. Any Claims in excess of any applicable collateral for such claims of any insurers against the Unsecured Creditors' Trust under rejected insurance policies shall be treated as General Unsecured Claims under Class 4 or 5, as applicable, and the Unsecured Creditors' Trust shall have all rights of the Debtors in and to any collateral posted for such policies or other rights provided pursuant to such policies. All of such insurers' rights and defenses under such policies are likewise reserved as to the Unsecured Creditors' Trust.

### 3.    The ACE Insurance Program

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Plan Supplement Documents, the Confirmation Order, any exit financing, any prepetition or administrative claim bar date order (or notice) or any other pleading, notice, or document or order of the Bankruptcy Court (including, without limitation, Articles VII (I) (1) and (2) and VIII of the Plan or any other provision that purports to be preemptory or supervening, grants an injunction or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases), on and after the Effective Date:

(i)    the Unsecured Creditors' Trust shall succeed to all of the Debtors' rights as an insured and shall be liable for the obligations under the ACE Insurance Program (provided that the monetary obligations owed to the ACE Companies shall be satisfied in accordance with subsection (iv) hereof) and the ACE Insurance Program shall be enforceable by and against the Unsecured Creditors' Trust.

(ii)    except to the extent otherwise specifically provided in this section VII.I.3 of the Plan, the terms and conditions of the ACE Insurance Program are not altered, including, but not limited to: (a) coverage for claims insured thereunder (even if such claims or the liability therefore have not been transferred to the Unsecured Creditors' Trust), (b) any agreement to arbitrate disputes, (c) any provisions requiring the payment of amounts within any deductible by the ACE Companies and any Claim the ACE Companies may have for reimbursement thereof, and (d) any right of the ACE Companies to not pay amounts within any self-insured retention;

(iii)    the ACE Companies' rights in the ACE Collateral shall survive and shall not be modified, waived, released, discharged or impaired in any respect as a result of confirmation of the Plan;

(iv)    the ACE Companies' Claim (including any amounts referenced in part (i)(c) hereof) shall be satisfied (in full dollars) solely from the existing ACE Collateral in the ordinary course and pursuant to the terms of the ACE Insurance Program;

(v)    in no event shall either the Unsecured Creditors' Trust or the Reorganized Debtors be required to make any payment on account of the ACE Companies' Claim and/or for any cost or expense incurred by the ACE Companies (other than by application of the existing ACE Collateral) or to provide additional collateral to the ACE Companies for the ACE Insurance Program;

33

(vi)     in no event shall the ACE Companies have or be entitled to any administrative or priority Claim against or distribution from the Unsecured Creditors' Trust (other than from the existing ACE Collateral);

(vii)     the automatic stay of Bankruptcy Code Section 362(a) and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit (a) claimants with valid Workers' Compensation claims or direct action claims covered by the ACE Insurance Program to proceed with their claims; (b) the ACE Companies to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Court, (I) all valid Workers' Compensation Claims covered by the ACE Insurance Program, (II) all claims where a claimant asserts a direct claim against any of the ACE Companies under applicable non-bankruptcy law, or an order has been entered by this Court granting a claimant relief from the automatic stay to proceed with its claim, and (III) all costs in relation to each of the foregoing; and (c) the ACE Companies to draw against any or all of the collateral or security provided by or on behalf of the Debtors (and the Reorganized Debtors and/or the Unsecured Creditors' Trust, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Reorganized Debtors and/or the Unsecured Creditors' Trust, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Reorganized Debtors and/or the Unsecured Creditors' Trust, as applicable) under the ACE Insurance Program, in such order as the ACE Companies may determine; and

(viii)     any claims or causes of action (including any Causes of Action) against the ACE Companies for return of excess proceeds, if any, of the ACE Collateral shall be transferred to the Unsecured Creditor Trust and any right to return of excess proceeds, if any, of the ACE Collateral shall be transferred to the Unsecured Creditors Trust..

### 4.     Alternate Dispute Resolution Procedures

(a)     The Unsecured Creditors' Trustee shall be deemed to substitute for the Debtors in the Alternative Dispute Resolution Procedures approved by the Court at (the "ADR Order"). The ADR Order shall remain in full force and effect.

### 5.     Distributions Following Allowance

Notwithstanding anything to the contrary set forth herein, each holder of a Disputed Claim that becomes an Allowed Claim subsequent to the applicable Initial Distribution Date shall receive the Distribution to which such holder of an Allowed Claim is entitled at such time that the Reorganized Debtors or the Unsecured Creditors' Trustee, as appropriate, determine, in their discretion, to make subsequent Distributions to holders of other Claims Allowed following the applicable Distribution Date. Nothing set forth herein is intended to, nor shall it, prohibit the Debtors or the Unsecured Creditors' Trustee, as appropriate, in their discretion, from making a Distribution on account of any Claim at any time after such Claim becomes an Allowed Claim.

### J.     Estimation

The Debtors, Reorganized Debtors, or the Unsecured Creditors' Trustee, as applicable, may at any time, request that the Court estimate any Disputed Claim pursuant to section 502(c)

34

of the Bankruptcy Code regardless of whether the Debtors, the Reorganized Debtors, or the Unsecured Creditors' Trustee have previously objected to such Claim. The Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim, except that the Court may not estimate any claim based on an alleged personal injury or wrongful death. In the event that the Court estimates any Disputed Claim, such estimated amount may constitute either (a) the Allowed amount of such Claim, (b) the amount on which a reserve is to be calculated for purposes of any reserve requirement to the Plan, or (c) a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors, the Reorganized Debtors, or the Unsecured Creditors' Trustee as the case may be, may elect to object to ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

### K.  Nonconsensual Confirmation

The Debtors will seek to have the Court confirm the Plan under section 1129(b) of the Bankruptcy Code.

### L.  Intercompany Claims

At the option of the Debtors or the Reorganized Debtors, as applicable, each Intercompany Claim shall be, either (i) reinstated and continued in full or in part, or (ii) eliminated in full or in part by offset, distribution, cancellation, assumption or contribution of such Intercompany Claim or otherwise; provided, however, that no Intercompany Claim shall be Allowed as a General Unsecured Claim or be payable from the Unsecured Creditors' Trust.

### M.  Liens

Notwithstanding anything to the contrary contained herein, the substantive consolidation of the Debtors pursuant to Article VI of this Plan shall not affect the extent or validity of any Lien.

Upon the treatment or other satisfaction of any Secured Claims in accordance with the Plan, the Liens securing such secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

### N.  Enforcement of Subordination

The classification and manner of satisfying all Claims and Equity Interests and the respective distributions and treatments under the Plan take into account or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan. The Confirmation Order shall enjoin, effective as of the Effective Date, all persons and entities from

35

enforcing or attempting to enforce any such contractual, legal and/or equitable rights so satisfied, compromised and settled.

# VIII.

# EFFECT OF CONFIRMATION OF THE PLAN

### A.    Continued Corporate Existence

The Debtors, as Reorganized Debtors, shall continue to exist after the Effective Date with all powers of a corporation or limited liability company, as the case may be, under the laws of the respective states governing their formation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith. In addition, the Reorganized Debtors may operate their business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan as well as the documents and instruments executed and delivered in connection therewith, including without limitation, the documents and instruments included in the Plan Supplement. The Reorganized Debtors shall be responsible for filing required post-confirmation reports and each Reorganized Debtor shall pay quarterly fees of such Debtor due to the Office of the United States Trustee until such time as a final decree is entered closing the applicable Chapter 11 Case or the Bankruptcy Code orders otherwise.

### B.    Settlement of Treatment of General Unsecured Claims

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the Plan constitutes a good faith compromise and settlement of the rights and claims, if any, that the holders of Claims may have against the Released Parties. Any Distributions to be made pursuant to the Plan shall be made on account, and in consideration, of the compromise and settlement provided hereunder, which upon the Effective Date shall be binding on the holders of Claims (whether or not Allowed). The entry of the Confirmation Order shall constitute the Court's approval, as of the Effective Date, of the settlement and the Court's finding that the settlement is in the best interests of the Debtors and their Estates.

### C.    Dissolution of Creditors' Committee

The Creditors' Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code. Thereafter, the Creditors' Committee shall continue in existence until the latest of: (1) the Effective Date; and (2) the conclusion of any appeals or other challenges or matters with respect to the Confirmation Order. On the latest of such dates, the Creditors' Committee shall be dissolved and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or this Plan and its implementation, and the retention or employment of the Creditors' Committee's attorneys, financial advisors, and other agents shall terminate: provided, however, such attorneys and financial advisors shall be entitled

36

to pursue their own Fee Claims. Following the Confirmation Date, in accordance with the foregoing, (x) the attorneys and financial advisors to the Creditors' Committee shall be entitled to request any reasonable claims for compensation for services rendered or reimbursement for expenses incurred after the Confirmation Date through and including the dissolution of the Creditors' Committee in connection with the services to the Creditors' Committee and (y) the members of the Creditors' Committee shall be entitled to reimbursement of their reasonable expenses incurred in connection with their exercise of the foregoing duties and responsibilities. The Reorganized Debtors shall pay, within ten (10) Business Days after submission of a detailed invoice to the Reorganized Debtors, such reasonable claims for compensation or reimbursement of expenses incurred by the professionals of the Creditors' Committee. If the Reorganized Debtors dispute the reasonableness of any such invoice, the Reorganized Debtors or the affected professional may submit such dispute to the Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such reasonable fees and expenses shall be paid as provided herein.

## D. Vesting of Property

All property of the Debtors' estates other than property transferred under the Plan shall be revested in the Reorganized Debtors on the Effective Date.

## E. Discharge of the Debtors

**The rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Debtors in Possession, the Reorganized Debtors or any of their respective assets or properties, arising prior to the Effective Date. Except as otherwise expressly specified in the Plan, the Confirmation Order shall act as of the Effective Date as a discharge of all debts of, Claims against, and Liens on the Debtors, their respective assets and properties, arising at any time before the Effective Date, regardless of whether a proof of Claim with respect thereto was filed, whether the Claim is Allowed, or whether the holder thereof votes to accept the Plan or is entitled to receive a distribution hereunder. Except as otherwise expressly specified in the Plan, after the Effective Date, any holder of such discharged Claim shall be precluded from asserting against the Debtors, the Reorganized Debtors, or any of their respective assets or properties, any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the entry of the Confirmation Order.**

## F. Injunction

**Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate order of the Court, all entities who have held, hold, or may hold Claims against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Reorganized**

37

Debtors or the Unsecured Creditors' Trust, with respect to any such Claim, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Reorganized Debtors or the Unsecured Creditors' Trust on account of any such Claim, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors or the Unsecured Creditors' Trust or against the property or interests in property of the Debtors or the Unsecured Creditors' Trust on account of any such Claim, and (d) asserting any right of setoff, or subrogation of any kind against any obligation due from the Debtors, the Reorganized Debtors or the Unsecured Creditors' Trust or against the property or interests in property of the Debtors on account of any such Claim. Such injunction shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtors) or the Unsecured Creditors' Trust and their respective properties and interests in property

## G. Preservation of Causes of Action

The Reorganized Debtors and the Unsecured Creditors' Trustee, as applicable, shall retain all causes of action, other than as expressly provided herein. Except as expressly provided in this Plan or the Confirmation Order, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any such causes of action. Nothing contained in this Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any claim, causes of action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date that is not specifically waived, released or relinquished by this Plan. The Reorganized Debtors and the Unsecured Creditors' Trustee, as applicable, shall have, retain, reserve and be entitled to assert all such claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim that are not specifically waived or relinquished by this Plan may be asserted after the Effective Date by the Reorganized Debtors or the Unsecured Creditors' Trust, as applicable, to the same extent as if the Chapter 11 Cases had not been commenced. The Plan Supplement sets forth a non-exhaustive list of causes of action that are preserved.

## H. Votes Solicited in Good Faith

The Debtors have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

## I. Administrative Claims Incurred After the Effective Date

Obligations incurred by the Reorganized Debtors after the Effective Date including (without limitation) Claims for Professionals' fees and expenses incurred after such date, may be paid by the Reorganized Debtors in the ordinary course of business and without application for or Court approval, subject to any agreements with any claim holders.

## J. Insider Releases by the Debtors

Upon the Release Effective Date, the Debtors and the Reorganized Debtors, on behalf of themselves and their estates (which shall include the Unsecured Creditors' Trust),

38

shall be deemed to release unconditionally (a) all of their current respective officers, directors, employees, partners, advisors, attorneys, financial advisors, accountants, and other professionals, acting in their capacities as such, (b) All Jones, LLC, (c) the DIP Lender, (d) the Pre-Petition Secured Creditors', (e) FMP, and (f) as to each of the foregoing, their respective officers, directors, principals, members, employees, partners, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and other professionals (collectively the "Released Parties" and each a "Released Party") from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities (which shall include the Excluded Insider Causes of Action) whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, or any omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, except that (i) no individual shall be released from any act or omission that constitutes gross negligence or willful misconduct (notwithstanding this clause (i), neither the debtors, Reorganized Debtors nor the Unsecured Creditors' Trust shall ever claim or assert that the actions of any of the Released Parties in determining to complete, or completing, the acquisition of the Debtors or the Non-Debtor Parent Companies pursuant to the Merger Agreement or the actions or omissions of the Released Parties in the management of the Debtors or the Non-Debtor Parent Companies between the closing of the Merger Agreement and the Petition Date constitute or may be characterized as gross negligence or willful misconduct for the purposes hereof), (ii) the Reorganized Debtors and the Unsecured Creditors' Trustee, as applicable, shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set off or recoupment against any Claims of any such persons asserted against the Debtors, (iii) the foregoing release shall not apply to any obligations that remain outstanding in respect of loans or advances made to individuals by the Debtors, (iv) the foregoing release applies to the Released Parties solely in their respective capacities described above and (v) notwithstanding any other provisions of the Plan, the foregoing release shall not affect the creation of the Unsecured Creditors' Trust. Unless and until there is a Default by the Reorganized Debtors in payment and performance under the Secured Trust Note, the filing of or prosecution of, causes of action to be released pursuant to this paragraph (which include the Excluded Insider Causes of Action) will be enjoined; provided, however, that any applicable limitation of actions periods shall be tolled during the pendency of such injunction until a date not earlier than 6 months after such injunction is lifted or expires by its own terms.

### K.  Insider Releases by non-Debtors

Upon the Release Effective Date, all Persons who (a) directly or indirectly, have held, hold, or may hold Claims, or (b) vote to accept the Plan as set forth on the relevant Ballot, and (c) do not mark their Ballot to indicate their refusal to grant the releases provided in this paragraph, shall be deemed, by virtue of their receipt of Distributions and/or other treatment contemplated under the Plan, to have forever released and covenanted with the Reorganized Debtors and the Released Parties not to (y) sue or otherwise seek recovery from any of the Reorganized Debtors or any Released Party on account of any Claim in any way related to the Debtors or their business and affairs, including but not limited to any Claim based upon tort, breach of contract, violations of

39

federal or state securities laws or otherwise, based upon any act, occurrence, or failure to act from the beginning of time through the Effective Date or (z) assert against any of the Reorganized Debtors or any Released Party any claim, obligation, right, cause of action or liability that any holder of a Claim or Interest may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, provided, however, (i) none of the Released Parties shall be released from any Claim primarily based on any act or omission that constitutes gross negligence or willful misconduct as determined by a court of competent jurisdiction (notwithstanding this clause (i), none of the Persons otherwise deemed to have granted a release under this Section VIII.K of the Plan shall ever claim or assert that the actions of any of the Released Parties in determining to complete, or completing, the acquisition of the Debtors or the Non-Debtor Parent Companies pursuant to the Merger Agreement or the actions or omissions of the Released Parties in the management of the Debtors or the Non-Debtor Parent Companies between the closing of the Merger Agreement and the Petition Date constitute or may be characterized as gross negligence or willful misconduct for the purposes hereof), (ii) the foregoing release shall not apply to obligations arising under the Plan, and (iii) the foregoing release shall not be construed to prohibit a party in interest from seeking to enforce the terms of the Plan. Unless and until there is a Default by the Reorganized Debtors in payment and performance under the Secured Trust Note, the filing of or prosecution of, causes of action to be released pursuant to this paragraph will be enjoined; provided, however, that any applicable limitation of actions periods shall be tolled during the pendency of such injunction until a date not earlier than 6 months after such injunction is lifted or expires by its own terms.

FOR THE AVOIDANCE OF DOUBT AND IN CONSIDERATION OF PAYMENTS MADE HEREUNDER TO THE LITIGATION TRUST, THE ABOVE RELEASES ARE INTENDED TO AND SHALL BE INTERPRETED TO RELEASE FMP, ALAMO CRG, THE PRE-PETITION SECURED CREDITORS AND ALAMO OVATION, LLC AND THEIR RESPECTIVE OFFICERS, DIRECTORS AND AGENTS OF AND FROM ANY AND ALL CLAIMS THAT HAVE BEEN OR COULD BE ASSERTED BY A CREDITOR OF THE DEBTORS, THE DEBTORS, A PERSON OR ENTITY ACTING ON BEHALF OF THE DEBTORS AGAINST ANY OF THEM OR IN ANY WAY TO THE DEBTORS (BEFORE OR AFTER THE EFFECTIVE DATE) OR THE ACQUISITION OF THE DEBTORS ON AUGUST 19, 2015.

L.    **Releases of Creditors' Committee, Committee Members and Committee Professionals**

Upon the Effective Date, the Creditors' Committee, members of the Creditors' Committee, acting in their capacities as such, and their respective officers, directors, principals, members, employees, partners, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and other professionals (collectively the "Committee Released Parties" and each a "Committee Released Party") shall be deemed to be released unconditionally from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever, whether known or unknown, foreseen or

40

unforeseen, existing or hereafter arising, in law, equity or otherwise, or any omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, except that (i) no person shall be released from any act or omission that constitutes gross negligence or willful misconduct, (ii) the Reorganized Debtors and the Unsecured Creditors' Trustee, as applicable, shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set off or recoupment against any Claims of any such persons asserted against the Debtors, and (iii) the foregoing release applies to the Committee Released Parties solely in their respective capacities described above.

### M. Exculpation and Injunction in Respect of Released Parties

#### 1. Exculpation

The Debtors, the Reorganized Debtors, the Released Parties, and the Committee Released Parties shall have no liability whatsoever to any holder or purported holder of an Administrative Claim, a Claim, or an Equity Interest for any act or omission in connection with, or arising out of, the Plan or the Disclosure Statement, the negotiation of the Plan or the Disclosure Statement, the negotiation of the documents included in the Plan Supplement, the pursuit of approval of the Disclosure Statement or the solicitation of votes for confirmation of the Plan, the Chapter 11 Cases, the consummation of the Plan, the administration and implementation of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or Disclosure Statement or in furtherance thereof except for any act or omission that constitutes willful misconduct or gross negligence as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Released Parties and Committee Released Parties from liability.

#### 2. Injunction

Pursuant to section 105 of the Bankruptcy Code, no holder or purported holder of an Administrative Claim, a Claim or an Equity Interest shall be permitted to commence or continue any action, employment of process, or any act to collect, offset, or recover any Claim against a Released Party or Committee Released Party that accrued on or prior to the Effective Date and that has been released or waived pursuant to this Plan.

### N. Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### O. Preservation of Insurance

The Debtors' discharge and release from all Claims as provided herein, except as necessary to be consistent with this Plan, shall not diminish or impair the enforceability of any

41

insurance policy that may cover Claims against the Debtors, the Reorganized Debtors (including, without limitation, its officers and current and former directors) or any other person or entity.

### P.     Indemnification Obligations Owed by the Debtors

Indemnification Obligations owed to directors, officers, and employees of the Debtors (or the estates of any of the foregoing) who served or were employed by the Debtors as of or after the Petition Date, excluding claims which have been determined by Final Order to have resulted from gross negligence, willful misconduct, breach of fiduciary duty, or intentional tort, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed pursuant to Sections 365 of the Bankruptcy Code under the Plan; provided that the Reorganized Debtors' liabilities in respect of such obligations shall be limited to the extent of available insurance coverage.

All Indemnification Obligations owed to directors, officers, and employees of the Debtors who served or were employed by the Debtors prior to, but not after, the Petition Date shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected pursuant to Section 365 of the Bankruptcy Code under the Plan.

Indemnification Obligations owed to any Professionals retained pursuant to sections 327 or 328 of the Bankruptcy Code and order of the Court, to the extent that such Indemnification Obligations relate to the period after the Petition Date, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed pursuant to section 365 of the Bankruptcy Code under the Plan.

### IX.

### RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, section 105(a) and section 1142 of the Bankruptcy Code and for, among other things, the following purposes: (1) to hear and determine motions for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of Claims resulting therefrom; (2) to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date; (3) to ensure that distributions to holders of Allowed Claims are accomplished as provided herein; (4) to resolve disputes as to the ownership of any Claim or Equity Interest; (5) to hear and determine objections to Claims and to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim; (6) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; (7) to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code; (8) to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order; (9) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code; (10) to hear and determine disputes arising in connection with the

42

interpretation, implementation, or enforcement of the Plan; (11) to hear and determine any issue for which the Plan requires a Final Order of the Court; (12) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; (13) to hear and determine disputes arising in connection with compensation and reimbursement of expenses of professionals for services rendered during the period commencing on the Petition Date through and including the Effective Date; (14) to hear and determine any Causes of Action, including any Avoidance Action, preserved under the Plan under Bankruptcy Code sections 544, 547, 548, 549, 550, 551, 553, and 1123(b)(3); (15) to hear and determine any matter regarding the existence, nature and scope of the Debtors' discharge; (16) to hear and determine any matter regarding the existence, nature, and scope of the releases and exculpation provided in Article VIII of the Plan; (17) to enter a final decree closing the Chapter 11 Cases; (18) to hear and determine all matters, controversies, suits, and disputes that may arise out of or in connection with the Unsecured Creditors' Trust, Unsecured Creditors' Trustee and/or the Unsecured Creditors' Trust Agreement; and (19) hear, determine, and adjudicate any and all (x) Claims, including allowance, classification, priority, compromise, estimation or payment, or (y) Transferred Avoidance Actions brought by the Unsecured Creditors' Trust .

## X.

## MISCELLANEOUS PROVISIONS

### A. Payment of Statutory Fees

All fees payable on or before the Effective Date pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors on or before the Effective Date. Each Reorganized Debtor shall pay such fees payable after the Effective Date until such time as a final decree is entered closing the applicable Chapter 11 Case or the Court orders otherwise.

### B. Modification of the Plan

Subject to the limitations contained in the Plan: (1) the Debtors reserve the right in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, may (in consultation with the Trust Advisory Board with respect to the treatment of holders of General Unsecured Claims and matters pertaining to the Unsecured Creditors' Trust or any other matter affecting the rights of the holders of General Unsecured Claims), and upon order of the Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code.

### C. Governing Law

Unless a rule of law or procedure is supplied by Federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas (without reference to the conflicts of laws provisions thereof) shall govern the construction and implementation of the Plan and any

43

agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

### D. Filing or Execution of Additional Documents

On or before the Effective Date, the Debtors or the Reorganized Debtors, shall file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### E. Withholding and Reporting Requirements

In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtors and Unsecured Creditors' Trustee, as applicable, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

### F. Exemption From Transfer Taxes

Pursuant to, and to the fullest extent permitted by, section 1146(c) of the Bankruptcy Code, (a) the issuance, transfer or exchange under the Plan of equity interests, (b) the making or assignment of any lease or sublease, or (c) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with the Plan shall not be subject to any stamp tax or other similar tax.

### G. Waiver of Federal Rule of Civil Procedure 62(a)

The Debtors may request that the Confirmation Order include (a) a finding that Fed. R. Civ. P. 62(a) shall not apply to the Confirmation Order, and (b) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

### H. Exhibits/Schedules

All Exhibits and schedules to the Plan and the Plan Supplement Documents are incorporated into and constitute a part of the Plan as if set forth herein.

### I. Notices

All notices, requests, and demands hereunder to be effective shall be in writing and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

To the Debtors: Buffets, LLC *et al.*, Attn: Adele Wang, 120 Chula Vista Dr., Hollywood Park, TX 78232, with a copy to counsel to the Debtors, Akerman LLP, Attn: David W. Parham and John E. Mitchell, 2001 Ross Avenue, Ste. 2550, Dallas, TX 75201 (Tel: 214-720-4300; Fax: 214-981-9339).

44

To the Creditors' Committee: In care of (a) Greenberg Traurig, LLP, Attn: Shari L. Heyen and David R. Eastlake, 1000 Louisiana, Suite 1700, Houston, Texas 77002 (Tel: 713-374-3564; Fax: 713-374-3505), and (b) Greenberg Traurig, LLP, Attn: David B. Kurzweil and John D. Elrod, 3333 Piedmont Road, NE, Suite 2500, Atlanta, Georgia 30305 (Tel: 678-553-2100; Fax: 678-553-2269).

To the DIP Lender, Alamo CRG, LLC: In care of (a) Dykema Cox Smith, Attn: Deborah D. Williamson and Patrick L. Huffstickler, 112 E. Pecan Street, Suite 1800, San Antonio, TX 78205 (Tel: 210-554-5500; Fax: 210-226-8395), and (b) Dykema Cox Smith, Attn: Mark E. Andrews, 1717 Main Street, Ste. 4200, Dallas, TX 75201 (Tel: 214-462-6400; Fax: 214-462-6401).

## J.    Plan Supplement

Forms of the Plan Supplement Documents (which may be in substantially final form), the Schedule of Additional Rejected Contracts and Leases, the Schedule of Additional Assumed Leases, the Schedule of Additional Rejected Contracts, the Unsecured Creditors' Trust Agreement, the identity of the members of the Trust Advisory Board, Trust Causes of Action, the Alamo Buffets Advance Agreement, the Secured Trust Note, the Inter-creditor and Subordination Agreement, the Assigned Causes of Action Agreement, amendments to certificates of incorporation and by-laws and lists of the Excluded Causes of Actions and the Excluded Insider Causes of Action (specifically identifying and naming each potential defendant thereto), and such other documents as the Debtors determine to be necessary or appropriate to the implementation and/or confirmation of the Plan shall be contained in the Plan Supplement which will be filed with the Clerk of the Court no later than fourteen (14) calendar days prior to the Confirmation Hearing. The Plan Supplement may be inspected in the office of the Clerk of the Court during normal court hours and shall be available online at "https://ecf.deb.uscourts.gov." Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to counsel to the Debtors in accordance with Article X.J of the Plan. In addition, the Plan Supplement will be available on the Claims Agent's website.

## K.    Conflict

The terms of this Plan shall govern in the event of any inconsistency with the summaries of the Plan set forth in the Disclosure Statement.

45

## L. **Destruction of Records**

Following the Effective Date, the Reorganized Debtors may destroy the copies of records maintained by Larson Records Management f/k/a Larson Business Data Storage which pre-date the Agreement and Plan of Merger, dated July 20, 2015.

## XI.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. **Assumption and Rejection of Executory Contracts and Unexpired Leases and Collateral Assignment of Real Property Leases**

To the extent not (i) assumed in the Chapter 11 Cases prior to the Confirmation Date, (ii) rejected in the Chapter 11 Cases prior to the Confirmation Date, (iii) subject of a separate motion or subject to the expedited procedures approved by the Court to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date, or (iv) specifically rejected pursuant to this Plan, each executory contract and unexpired lease that exists between Debtor and any Person is specifically rejected by the Debtor that is a party to such executory contract or unexpired lease as of and subject to the Effective Date pursuant to the Plan.

    1.    The following executory contracts and unexpired leases are rejected:

    (i)    executory contacts or unexpired leases that were rejected before the Confirmation Date;

    (ii)    contracts and unexpired leases identified on the Schedule of Additional Rejected Contracts and Leases in the Plan Supplement, which contracts and unexpired leases are deemed rejected by the applicable Debtor as of the corresponding rejection dates set forth on the Schedule of Additional Rejected Contracts and Leases.

Unexpired leases of nonresidential real property identified on the Schedule of Additional Assumed Contracts and Leases in the Plan Supplement, are specifically assumed by the applicable Debtor listed on such schedule as of and subject to the Effective Date, and the Confirmation Order shall operate as an order authorizing the Debtors' assumption of the leases set forth on the Schedule of Additional Assumed Leases as may be amended by agreement of the parties thereto, as of and subject to the Effective Date.

    2.    The following executory contracts and unexpired leases are assumed:

    (i)    the FMP Management Agreement (subject to subordination of the FMP Cure Claim as provided elsewhere in the Plan);

    (ii)    all existing insurance policies that have not expired, been rejected or are subject to a motion to reject as of the Confirmation Date;

    (iii)    all executory contracts and all real estate leases that have been assumed pursuant to a court order during these bankruptcy cases; and

(iv) all contracts with food vendors that were not rejected prior to confirmation or were not the subject of a motion to reject as of the Confirmation Date.

## B. Limited Extension of Time to Assume or Reject

In the event of a dispute as to whether a contract or lease is executory or unexpired, the right of the Debtors or Reorganized Debtors to move to assume or reject such contract or lease, either by motion or pursuant to such expedited procedures as have been approved by the Court, shall be extended until the date that is thirty (30) days after the entry of a Final Order by the Court determining that the contract or lease is executory or unexpired. The deemed assumptions and rejections provided for in this Article XI of the Plan shall not apply to such contract or lease.

In the event the Debtors or the Reorganized Debtors become aware after the Effective Date of the existence of an executory contract or unexpired lease that was not included in the Schedules or on the Schedule of Additional Assumed Contracts and Leases, the right of the Reorganized Debtors to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the date on which the Debtors or the Reorganized Debtors become aware of the existence of such contract or lease. The deemed assumptions and rejections provided for in this Article XI.D. of the Plan shall not apply to any such contract or lease.

The Debtors reserve the right to amend the Schedule of Additional Rejected Contracts and Leases up until three (3) days prior to the Confirmation Hearing and amend the Schedule of Additional Assumed Contracts and Leases up until the Effective Date.

## C. Cure

Except as otherwise provided elsewhere in the Plan, the applicable Reorganized Debtor, except as otherwise agreed by the parties, will cure any and all undisputed defaults under any executory contract or unexpired lease that is assumed by such Reorganized Debtor pursuant to the Plan in accordance with section 365 of the Bankruptcy Code. In the event there is a dispute as of the Effective Date regarding the amount required to cure defaults under any executory contract or unexpired lease that the Reorganized Debtors propose to assume, the Reorganized Debtors shall have until thirty (30) days after entry of a Final Order determining the amount, if any, of the applicable Debtor or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed by the parties, to determine whether to assume or reject the related executory contract or unexpired lease. In the event the applicable Reorganized Debtor determines to assume the applicable executory contract or unexpired lease related to the disputed cure, such disputes shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the applicable Debtor or the applicable Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

## D. Rejection Damage Claims

All Claims for damages arising from the rejection of executory contracts or unexpired leases must be filed with the Court in accordance with the terms of the order authorizing such rejection and any applicable bar dates established during the case, but in no event later than thirty (30) days after the Effective Date (unless rejected at a later date as a result of a disputed cure amount as set forth in Article XI.C. herein). Any Claims not filed within such time will be

forever barred from assertion against the Debtors, their respective estates, the Reorganized Debtors, and the Unsecured Creditors' Trust. All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as General Unsecured Claims.

### E. **Collateral Assignment of Real Property Leases**.

Effective as of the Confirmation Date, all Real Property Leases shall be collaterally assigned to the Unsecured Creditors' Trust to secure the Reorganized Debtors' obligations under the Secured Trust Note and all related loan and security documents. Each party to each Real Property Lease is hereby deemed to have consented to, and/or agreed that, (1) the Reorganized Debtors collaterally assigning each Real Property Lease to the Unsecured Creditors' Trust to secure the Reorganized Debtors' obligations under the Secured Trust Note and all related loan and security documents pursuant to the terms of a Collateral Assignment of Real Property Leases, (2) any Reorganized Debtor's execution and delivery of a Collateral Assignment of Real Property Leases, (3) the Unsecured Creditors' Trust's recordation of any such Collateral Assignment of Real Property in the real property, or other appropriate records, in the jurisdiction where any real property that is the subject of any Real Property Lease is located, (4) the Unsecured Creditors' Trust's taking of any other action reasonably deemed necessary by the Unsecured Creditors Trust to perfect its security interest in any Real Property Lease, (5) none of the foregoing shall constitute a breach, default, event of default, or other similar event under any Real Property Lease, and (6) no party to any Real Property Lease shall take, or be entitled to take, any remedial action under such Real Property Lease as a result of any of the foregoing.

## XII.

## BENEFIT PLANS

As of and subject to the Effective Date, all employee compensation and benefit plans, policies, and programs of the Debtors applicable generally to their employees, as in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, incentive plans, and life, accidental death, and dismemberment insurance plans, but excluding any employment and severance agreements, plans or policies (unless, with the consent of the Requisite Consenting Parties, such employment and severance agreements, plans or policies are assumed by the Debtors pursuant to Court order), shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed under the Plan, and the Debtors' obligations under such agreements and programs shall survive the Effective Date of the Plan, without prejudice to the Reorganized Debtors' rights under applicable non-bankruptcy law to modify, amend, or terminate the foregoing arrangements, except for (i) such executory contracts or plans specifically rejected pursuant to the Plan, including on the Schedule of Additional Rejected Contracts and Leases (to the extent such rejection does not violate section 1114 of the Bankruptcy Code), and (ii) such executory contracts or plans as have previously been terminated, or rejected, pursuant to a Final Order, or specifically waived by the beneficiaries of such plans, contracts, or programs

# XIII.

# EFFECTIVENESS OF THE PLAN

## A.    Conditions Precedent to Confirmation

Confirmation of this Plan is subject to the Confirmation Order being in form and substance acceptable to the Debtors, and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

## B.    Conditions Precedent to Effectiveness

The Plan shall not become effective unless and until it has been confirmed and the following conditions have been satisfied in full or waived pursuant to Article XIII C:

1)    the Confirmation Order, in form and substance satisfactory to the Debtors, shall have become a Final Order;

2)    all authorizations, consents and regulatory approvals required (if any) for the Plan's effectiveness shall have been obtained;

3)    each of the Plan Supplement Documents shall be in form and substance satisfactory to the Debtors and the Creditors' Committee and any conditions (other than the occurrence of the Effective Date or certification by a Debtor that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith;

4)    each of the Creditors' Trust Agreement, the Subordination Agreement, the Assigned Causes of Agreement, and the Secured Trust Note and all related loan and security documents shall be in form and substance satisfactory to the Debtors and Creditors' Committee;

5)    the Unsecured Creditors' Trust Cash Component shall have been paid to the Unsecured Creditors' Trust and the Secured Trust Note (including, without limitation, any ancillary documents) shall have been executed and delivered by the Reorganized Debtors, and the remaining Trust Assets shall have been transferred to the Unsecured Creditors' Trust ;

6)    all documents necessary to create and perfect the security interests to be granted to the Unsecured Creditors' Trust shall have been fully executed and duly recorded in appropriate jurisdictions; and

7)    all ancillary agreements, such as, without limitation, the Unsecured Creditors' Trust Agreement, the Subordination Agreement, the Alamo Buffets Advance Agreement, and the Assigned Causes of Action Agreement, shall have been executed and delivered by all parties thereto.

49

## C.     Waiver of Conditions

The Debtors may waive the conditions set forth in Article XIII B(1) and (2) at any time without leave of or order of the Court and without any formal action.

The Debtors and Creditors' Committee may agree jointly in writing to waive any of the conditions set forth in Article XIII B (3) through (7) without leave of an order of the Court.

## D.     Effect of Failure of Conditions

In the event that the Effective Date does not occur on or before ninety (90) days after the Confirmation Date, or such later date as may be determined in a Court Order, upon notification submitted by the Debtors to the Court: (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors unless extended by Court order.

## E.     Vacatur of Confirmation Order

If a Final Order denying confirmation of the Plan is entered, or if the Confirmation Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the holder of any Claim against, or Equity Interest in, the Debtors; (c) prejudice in any manner any right, remedy or claim of the Debtors; or (d) be deemed an admission against interest by the Debtors.

## F.     Revocation, Withdrawal, or Non-Consummation

### 1.     Right to Revoke or Withdraw

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date.

### 2.     Effect of Withdrawal, Revocation, or Non-Consummation

If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), the assumption or rejection of executory contracts, unexpired leases, or benefit plans effected by the Plan, any release, exculpation or indemnification provided for in the Plan, and any document or agreement executed pursuant to the Plan shall be null and void. In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims by or against or

50

Interests in the Debtors or any other Person, to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other Person.

Dated: April 27, 2017

**BUFFETS, LLC**

By: _____
Name:   Peter Donbavand
Title:    Vice President for Real Estate and
         Business Development

**HOMETOWN BUFFET, INC.**

By: _____
Name:   Peter Donbavand
Title:    Vice President for Real Estate and
         Business Development

**OCB RESTAURANT COMPANY, LLC**

By: _____
Name:   Peter Donbavand
Title:    Vice President for Real Estate and
         Business Development

**OCB PURCHASING CO.**

By: _____
Name:   Peter Donbavand
Title:    Vice President for Real Estate and
         Business Development

**RYAN'S RESTAURANT GROUP, LLC**

By: _____
Name:   Peter Donbavand
Title:    Vice President for Real Estate and
         Business Development

**FIRE MOUNT RESTAURANTS, LLC**

By: _____
Name:   Peter Donbavand
Title:    Vice President for Real Estate and
         Business Development

41595382v1