**EXHIBIT C**
**Unsecured Creditors' Trust Agreement**

{41196211;1}

## UNSECURED CREDITORS' TRUST AGREEMENT

This Unsecured Creditors' Trust Agreement (the "Unsecured Creditors' Trust Agreement" or "Agreement") is made this 18th day of May, 2017, by and between Buffets, LLC, and certain of its affiliates, the debtors and debtors in possession in the Chapter 11 Cases (collectively, the "Debtors" and, as reorganized pursuant to the Plan (as defined below), the "Reorganized Debtors")[1], on the one hand, and META Advisors, LLC, not individually, but solely as the Unsecured Creditors' Trustee for Class 4 General Unsecured Claims, as well as Class 5 Convenience Claims (the "Unsecured Creditors' Trustee" and together with the Debtors, the "Parties"), on the other hand, executed in connection with the *Amended Joint Chapter 11 Plan of Reorganization of Buffets, LLC, et al., Under Chapter 11 of the Bankruptcy Code* (as amended from time to time, the "Plan") in the Chapter 11 Cases currently pending in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Bankruptcy Court") with a caption of In re Buffets, LLC, *et al.*, Case No. 16-50557 (Jointly Administered) (the "Chapter 11 Cases"). Except with respect to the terms defined herein, all capitalized terms used herein shall have the meanings ascribed to them in the Plan.

### WITNESSETH

**WHEREAS**, the Plan was confirmed by the Confirmation Order;

**WHEREAS**, this Agreement and the entity created hereunder is created pursuant to, and to effectuate, the Plan, and is effective on the Effective Date of the Plan;

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Buffets, LLC (2294); Hometown Buffet, Inc. (3002); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); Fire Mountain Restaurants, LLC (8003); and Tahoe Joe's, Inc. (7129). The address for all of the Debtors is 120 Chula Vista Drive, Hollywood Park, Texas 78232.

**WHEREAS**, the entity formed hereunder is created on behalf, and for the sole benefit, of the holders of General Unsecured Claims in Class 4 under the Plan, as well as holders of Convenience Claims in Class 5 under the Plan, as beneficiaries;

**WHEREAS**, the entity created hereunder is, subject to the treatment of the Disputed Claims Reserve (as defined below), intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and as a "grantor trust" pursuant to the Internal Revenue Code sections 671-677 for United States federal income tax purposes, with the Beneficiaries treated as the grantors and owners of the Trust Assets;

**WHEREAS**, the entity created hereunder is established for the purpose of receiving, collecting, holding, and liquidating the Trust Assets and distributing the same and the proceeds thereof for the benefit of the beneficiaries in accordance with the terms of this Agreement and the Plan with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the entity created hereunder;

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants contained herein and in the Plan, the Parties agree as follows:

## ARTICLE I

## DEFINITIONS AND INTERPRETATIONS

1.1 <u>Definitions</u>.

1.1.1 "<u>Available Cash</u>" shall mean Cash proceeds of the Trust Assets after paying, funding, reserving against, or satisfying the Convenience Claims Distribution and any and all fees incurred or reserved for operating and all administrative expenses, including, but not limited to, all taxes, costs, expenses, and obligations incurred by the Unsecured Creditors'

Trustee and all professionals who may be employed by the Unsecured Creditors' Trustee in enforcing and administering this Unsecured Creditors' Trust Agreement and the entity created hereunder, and otherwise carrying out the Unsecured Creditors' Trustee's responsibilities under this Agreement or the Plan, or in any manner connected, incidental, or related thereto and payment of such expenses.

  1.1.3 "Beneficiaries" shall collectively mean holders of General Unsecured Claims in Class 4 under the Plan, or any successors to such holders.

  1.1.4 "Convenience Beneficiaries" shall collectively mean holders of Convenience Claims in Class 5 under the Plan, or any successors to such holders.

  1.1.5 "Convenience Claims Distribution" shall mean distributions to be made to the Convenience Beneficiaries pursuant to the Plan.

  1.1.6 "Permitted Investments" shall include (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof, (c) such other investments as the Bankruptcy Court or United States Trustee may approve from time to time, or (d) demand deposits or certificates of deposit at any bank or trust company that has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, provided, however, that the scope of any Permitted Investments shall be limited to include only those investments that, within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to be held, pursuant to Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

1.2    <u>Interpretation</u>.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

1.3    <u>Particular Words</u>.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof," "herein," "hereinafter," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.  The word "including" shall be construed to mean including without limitation.

## ARTICLE II

### PURPOSE, FUNDING AND APPOINTMENT
### OF UNSECURED CREDITORS' TRUSTEE

2.1    <u>Purpose</u>.  The Parties, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Unsecured Creditors' Trust for the purpose of receiving, collecting, distributing, and liquidating the Trust Assets, in accordance with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The purpose of this Agreement is to implement certain provisions of the Plan on behalf, and for the benefit, of the Beneficiaries and Convenience Beneficiaries, to serve as a mechanism for liquidating and converting to Cash the Trust Assets and distributing the Available Cash and/or assets of the Trust Assets to the Beneficiaries and Convenience Beneficiaries. The entity created hereunder will not hold itself out as an investment company and will not conduct a trade or business. The Unsecured Creditors' Trustee shall be the exclusive trustee of the Trust Assets for purposes of 31 U.S.C. § 3713(b) and Internal Revenue Code section 6012(b)(3).  The Unsecured Creditors' Trustee will distribute the Available Cash and/or assets of the Trust Assets to the

Beneficiaries and Convenience Beneficiaries in accordance with this Agreement, the Plan, and the Confirmation Order. For avoidance of doubt, the Trust must pay or reserve for all of its expenses before making any distribution.

2.3     Funding.  On the Effective Date, the entity created hereunder shall be funded with the Trust Assets, which consist of: (a) Cash in the amount of $6.5 million, (b) the Secured Trust Note provided for in the Plan, (c) Causes of Action to be assigned to the Unsecured Creditors' Trust pursuant to the Plan (including, without limitation, any right to recover excess proceeds of any letter of credit or any other collateral security held by the ACE Companies that secures the ACE Companies' Claim), together with any proceeds thereof, and (d) certain Assigned Non-Debtor Causes of Action and/or proceeds thereof to be assigned to the Unsecured Creditors' Trust pursuant to the Assigned Non-Debtor Causes of Action Agreement referenced in the Plan.

2.4     Securities Law.  Under section 1145 of the Bankruptcy Code, the issuance of beneficial interests to the Beneficiaries and/or Convenience Beneficiaries under the Plan shall be exempt from, among other things, the registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.  If the Unsecured Creditors' Trustee determines, with the advice of counsel, that it is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Unsecured Creditors' Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

2.5     Appointment and Acceptance of Unsecured Creditors' Trustee.  The Unsecured Creditors' Trustee shall be deemed to be appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and all other applicable sections of the Bankruptcy Code.  The Unsecured

Creditors' Trustee accepts the entity created by this Agreement and the grant, assignment, transfer, conveyance, and delivery to the Unsecured Creditors' Trustee, on behalf, and for the benefit, of the Beneficiaries and the Convenience Beneficiaries, all of the Debtors' respective right, title, and interest in the Trust Assets, upon and subject to the terms and conditions set forth in this Agreement, the Plan, the Confirmation Order, and the Assigned Non-Debtor Causes of Action Agreement.

2.6     Name of Trust.   The Unsecured Creditors' Trust created under the Plan and hereby shall officially be known as the "Buffets Unsecured Creditors' Trust".

2.7     Capacity of Trust.   Notwithstanding any federal or state law to the contrary or anything herein, the Unsecured Creditors' Trust shall have the capacity, in its own right and name, to act or refrain from acting, including in the capacity to sue and be sued and to enter into contracts.  The Unsecured Creditors' Trust alone may be the movant, respondent, party plaintiff or defendant, or the like, in any adversary proceedings, contested matters, and other state and federal proceedings brought by or against it, and may settle or compromise matters in its own name.

2.8     Transfer of Trust Assets.

2.8.1   Conveyance of Unsecured Creditors' Trust Assets.   Pursuant to the Plan, the Debtors hereby grant, release, assign, transfer, convey and deliver, on behalf of the Beneficiaries and the Convenience Beneficiaries, the Trust Assets to the Unsecured Creditors' Trust as of the Effective Date in trust for the benefit of the Beneficiaries and the Convenience Beneficiaries to be administered and applied as specified in this Agreement and the Plan.  Pursuant to the Plan and the Assigned Causes of Action Agreement, the Non-Debtor Parent Companies have effected the grant, release, assignment, transfer, conveyance and delivery, on behalf of the Beneficiaries

-6-

and the Convenience Beneficiaries, the Assigned Non-Debtor Causes of Action to the Unsecured Creditors' Trust as of the Effective Date in trust for the benefit of the Beneficiaries and the Convenience Beneficiaries to be administered and applied as specified in this Agreement and the Plan. The Reorganized Debtors shall, from time to time, as and when reasonably requested by the Unsecured Creditors' Trustee, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Reorganized Debtors shall take or cause to be taken such further action as the Unsecured Creditors' Trustee may reasonably deem necessary or appropriate, to vest or perfect in the Unsecured Creditors' Trust or confirm to the Unsecured Creditors' Trustee's title to and possession of the Trust Assets. The Unsecured Creditors' Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement, the Assigned Causes of Action Agreement or by the Plan or to ensure their compliance with the terms of the Plan, the Assigned Causes of Action Agreement or the Confirmation Order (as applicable), and shall be conclusively entitled to rely on the legality and validity of such transfers. Without the need for filing any motion for such relief, in connection with the Trust Assets, the Unsecured Creditors' Trust or the Unsecured Creditors' Trustee (as applicable) hereby shall be deemed substituted (i) for the Debtors (x) in all pending matters including but not limited to motions, contested matters and adversary proceedings in the Bankruptcy Court; and (y) any Causes of Action pending before the Bankruptcy Court or any other court; and (ii) for any plaintiffs, putative plaintiffs or claimants that are not Debtors in any Assigned Non-Debtor Causes of Action.

2.8.2 <u>Title to Trust Assets</u>. Pursuant to the Plan, all of the Debtors' right, title and interest in and to the Trust Assets, including all such assets held or controlled by third parties (which includes, but is not limited to, the Assigned Non-Debtor Causes of Action), are

-7-

automatically vested in the Unsecured Creditors' Trust on the Effective Date, free and clear of all liens, claims, encumbrances and other interests, except as specifically provided in the Plan or the other Transaction Documents, and such transfer is on behalf of the Beneficiaries and the Convenience Beneficiaries to establish the Unsecured Creditors' Trust. The Unsecured Creditors' Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties, pursue all of the Causes of Action and Assigned Non-Debtor Causes of Action, and pursue, assert and/or and exercise all rights of setoffs and recoupment and defenses of the Debtors or their Estates to any counterclaims that may be asserted by any and all defendants as to any Causes of Action, Assigned Non-Debtor Causes of Action and/or Holders of General Unsecured Claims or Convenience Claims. On the Effective Date, the Unsecured Creditors' Trust shall stand in the shoes of the Debtors and any third parties for all purposes with respect to the Trust Assets and administration of General Unsecured Claims and Convenience Claims. To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtors or any third parties to the Unsecured Creditors' Trust and such law is not superseded by the Bankruptcy Code, the Unsecured Creditors' Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in this section 2.8, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages. By executing this Agreement, the Unsecured Creditors' Trustee on behalf of the Unsecured Creditors' Trust hereby accepts all of such property as Trust Assets, to be held in trust for the Beneficiaries and the Convenience Beneficiaries, subject to the terms of this Agreement and the Plan.

2.9     Preservation of Privileges and Defenses.     The actions taken by the Debtors or the Reorganized Debtors in connection with the Plan, this Agreement and the Trust Assets shall not be (or deemed to be) a waiver of any privilege of any of the Debtors or the Reorganized Debtors, as applicable, including any attorney-client privilege or work-product privilege attaching to any document or communications (whether written or oral).  Notwithstanding any Debtor or any party-in-interest in any Assigned Non-Debtor Causes of Action providing any privileged information to the Unsecured Creditors' Trust, Unsecured Creditors' Trustee, Trust Advisory Board or any member thereof, such privileged information shall be without waiver in recognition of the joint and/or successor interest in prosecuting the Causes of Action, Assigned Non-Debtor Causes of Action, and/or objections to General Unsecured Claims, Convenience Claims or Secured Claims, as applicable, and shall remain privileged.

## ARTICLE III

## ADMINISTRATION

3.1     Rights, Powers, Privileges and Duties.  The Unsecured Creditors' Trustee shall have the rights, powers, privileges, and duties expressly provided in this Agreement and the Plan and any rights, powers, privileges, and duties reasonably incidental thereto, including, but not limited to:

A.     Exercising all powers provided to the Unsecured Creditors' Trustee under this Agreement, the Plan, the Confirmation Order, and the Assigned Causes of Action Agreement and any documents ancillary thereto, including, but not limited to, the Secured Trust Note and other transaction documents included in the Plan Supplement;

B.     Executing any documents and taking any other actions related to, or in connection with, the exercise of the Unsecured Creditors' Trustee's powers granted in this

Agreement, the Plan, the Confirmation Order, and the Assigned Non-Debtor Causes of Action Agreement;

C.   Holding legal title to any and administering all rights of the Beneficiaries and the Convenience Beneficiaries in, to, or arising from the Trust Assets;

D.   Protecting and enforcing the rights in and to and value of the Trust Assets vested in the Unsecured Creditors' Trust by this Agreement by any method consistent with the Plan, the Confirmation Order, and the Assigned Causes of Action Agreement reasonably determined by the Unsecured Creditors' Trustee to be appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

E.   Liquidating the Trust Assets, including, without limitation, prosecuting, collecting, compromising and/or settling the Trust Causes of Action, as well as any rights under the Secured Trust Note and related security interests and documents;

F.   Making distributions of the Trust Assets to or on behalf of the Beneficiaries, the Convenience Beneficiaries, and the substantial contribution claim of Value Extraction Services, LLC (as set forth in Article III., Section C. of the Plan) in accordance with this Agreement, the Plan, and the Confirmation Order and causing the Unsecured Creditors' Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge the Unsecured Creditors' Trustee has determined, based on the advice of its professionals, may be required to be withheld from such distribution under applicable law;

G.   Reconciliation and administration of General Unsecured Claims and Convenience Claims pursuant to the Plan;

-10-

H.      Object to, settle or otherwise resolve objections to General Unsecured Claims and Convenience Claims;

I.      Object to, settle or otherwise resolve objections to Secured Claims to the extent such Claims affect any potential recovery for the benefit of the Unsecured Creditors' Trust and/or the Beneficiaries, as well as to associated liens which may attach or be attached to any Trust Assets, including, without limitation, any Cash or other collateral in which the ACE Companies assert a security interest or other interest;

J.      Retaining, as an expense, attorneys, advisors, other professionals and employees as may be appropriate in the Unsecured Creditors' Trustee's discretion to perform the duties required of the Unsecured Creditors' Trustee under this Agreement and/or the Plan;

J.      Determining and satisfying any and all taxes and ordinary course liabilities associated with the Unsecured Creditors' Trust, including reasonable professional fees and expenses incurred with respect thereto;

K.      Receiving reasonable compensation for performing services under this Agreement, provided that Reorganized Debtors shall not be responsible for paying any compensation to the Unsecured Creditors' Trustee and that such compensation shall be paid solely from the Trust Assets;

L.      Filing any and all tax returns and paying taxes properly payable by the Unsecured Creditors' Trust, if any, as well as preparing, filing and issuing any and all necessary information returns, and taking any and all action necessary to obtain payment of any tax refund(s);

M.      Complying with all applicable taxing laws and regulations and making distributions as and when may be required to ensure that the Unsecured Creditors' Trust created

-11-

hereunder shall be treated as "grantor trust" for tax purposes, with the Beneficiaries and/or Convenience Beneficiaries to be treated as the grantors and owners of the Trust Assets, and the Unsecured Creditors' Trustee having the discretion to determine how and when to make distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or this Agreement, provided further that neither the Unsecured Creditors' Trust nor the Unsecured Creditors' Trustee shall have any responsibility whatsoever with respect to any of the Debtors' or Reorganized Debtors' tax returns due to be filed after the Effective Date or for any tax liability related thereto;

N.     Making all necessary filings in accordance with any applicable law, statute, or regulation;

O.     Investing the Trust Assets and any other assets or properties received by the Unsecured Creditors' Trust created hereunder or the Unsecured Creditors' Trustee or otherwise held by the Unsecured Creditors' Trust created hereunder or the Unsecured Creditors' Trustee in accordance with this Agreement;

P.     In the event that the Unsecured Creditors' Trustee determines that the Beneficiaries, Convenience Beneficiaries, or the Unsecured Creditors' Trust created hereunder may, will or have become subject to different tax consequences than those described in this Agreement, taking such actions that will, or are intended to, address such different tax consequences;

Q.     Creating sub-entities or title vehicles of which the Unsecured Creditors' Trust created hereunder or the Beneficiaries or the Convenience Beneficiaries hold the beneficial or ownership interests, as applicable;

R.	Opening and maintaining bank accounts on behalf of or in the name of the Unsecured Creditors' Trust created hereunder;

S.	Maintaining on the Unsecured Creditors' Trust's books and records a register evidencing the beneficial interest in the entity created hereunder held by each Beneficiary or Convenience Beneficiary;

T.	Being considered an estate representative under section 1123 of the Bankruptcy Code with respect to the Trust Assets;

U.	Providing periodic reports and updates to the Reorganized Debtors upon reasonable request regarding all actions taken in furtherance of this Agreement, including, among other things, the status of the administration of the Trust Assets, liabilities incurred and distributions made pursuant to this Agreement and the Plan;

V.	Having the right, but not the obligation, to provide periodic reports and updates to the Beneficiaries or Convenience Beneficiaries regarding, among other things, the status of the administration of the Trust Assets, liabilities incurred and distributions made pursuant to this Agreement and the Plan;

W.	Performing such functions and taking such actions as are provided for, or permitted in, or are otherwise consistent with, this Agreement, the Plan, the Confirmation Order, or any other agreement executed pursuant to this Agreement, the Plan, or the Confirmation Order that the Unsecured Creditors' Trustee deems reasonably necessary or desirable to administer the Unsecured Creditors' Trust; and

X.	Terminating the Unsecured Creditors' Trust created hereunder.

3.2	Claims Administration.  Pursuant to the Plan, the Unsecured Creditors' Trustee's rights and duties with respect to claims administration are as follows:

A.      The Unsecured Creditors' Trustee shall have standing and the exclusive right to reconcile, object to, settle, and make distribution decisions related to General Unsecured Claims (including, without limitation, Insured Claims) and Convenience Claims, and the Unsecured Creditors' Trustee may rely on the Debtors' schedules and/or the official claims register maintained in the Debtors' Bankruptcy Cases in reviewing, reconciling, or causing the Unsecured Creditors' Trust to allow, object to, settle or otherwise resolve any Claims;

B.      The Unsecured Creditors' Trustee shall also have standing and the right to object to Secured Claims to the extent any such Claims affect any potential recovery for the benefit of the Unsecured Creditors' Trust and/or its beneficiaries, as well as to associated liens which may attach or be attached to any Trust Assets, including, without limitation, any Cash or other collateral in which the ACE Companies assert security interest or other interest;

C.      The Unsecured Creditors' Trustee shall have standing and the right to litigate Causes of Action, Assigned Non-Debtor Causes of Action, and Claims objections filed prior to the Effective Date that remain pending as of the Effective Date;

D.      The Unsecured Creditors' Trustee may assert any and all defenses, setoff and recoupment rights of any party related to all Claims, Causes of Action, and Non-Debtor Assigned Causes of Action; and

E.      The Unsecured Creditors' Trustee may compromise and settle any and all Claims in its discretion without the need for approval by any court.

3.3     <u>Agents and Professionals</u>.  The Unsecured Creditors' Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants or other professionals and employees as the Unsecured Creditors' Trustee deems appropriate in the reasonable exercise of his, her or its discretion, and who the Unsecured Creditors' Trustee

reasonably determines to have qualifications necessary to assist the Unsecured Creditors' Trustee in the proper administration of the entity created hereunder. The Unsecured Creditors' Trustee shall pay the reasonable fees, costs and expenses of such persons out of the Trust Assets, on a first priority basis, in the ordinary course of business (with no other recourse to the Debtors, the Reorganized Debtors, or any property transferred pursuant to the Plan). The Reorganized Debtors shall not be responsible for paying any fees or expenses incurred by the Unsecured Creditors' Trustee.

3.4     Safekeeping of Trust Assets. The Trust Assets shall, until distributed or paid over as herein provided or as provided in the Plan, be held in trust for the benefit of the Beneficiaries, or the Convenience Beneficiaries, as applicable, in accordance with the Plan and this Agreement. The Unsecured Creditors' Trustee shall be under no liability for interest or producing income on any moneys received by him, her or it and held for distribution or payment to the Beneficiaries or Convenience Beneficiaries, except as such interest or income shall actually be received by the Unsecured Creditors' Trustee.

3.5     Limitations on Unsecured Creditors' Trustee. Neither the Unsecured Creditors' Trust nor the Unsecured Creditors' Trustee shall at any time enter into or engage in any trade or business, and no part of the Trust Assets or the proceeds, revenue, or income therefrom shall be used or disposed of by the Unsecured Creditors' Trust created hereunder in furtherance of any trade or business. Notwithstanding the foregoing, the Unsecured Creditors' Trustee is authorized and directed to perform obligations set forth herein and in the Plan.

3.6     Investment. The Unsecured Creditors' Trustee may only invest the Trust Assets or any proceeds, revenue, or income therefrom in Permitted Investments, in a manner consistent with the requirements of the Bankruptcy Code or any order of the Bankruptcy Court modifying

-15-

such requirements and, provided that the Unsecured Creditors' Trustee does so, he, she or it shall have no liability in the event of insolvency of any institution in which he, she or it has invested any of the Trust Assets or any proceeds, revenue, or income therefrom.

3.7 <u>Unsecured Creditors' Trustee Action</u>. The Unsecured Creditors' Trustee shall hold, collect, conserve, protect, and administer the Trust Assets in accordance with the provisions of this Agreement and the Plan, and pay and distribute amounts as set forth therein for the purposes set forth in the Plan and this Agreement. Any good faith determination by the Unsecured Creditors' Trustee as to what actions are in the best interests of the entity created hereunder and the Beneficiaries and/or the Convenience Beneficiaries shall be determinative.

3.8 <u>Bankruptcy Court Approval of Unsecured Creditors' Trustee's Actions</u>. Except as provided in the Plan or as otherwise specified in this Agreement, the Unsecured Creditors' Trustee need not obtain an order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court. Except as provided in the Plan or otherwise specified in this Agreement, the Unsecured Creditors' Trustee shall exercise his, her or its business judgment for the benefit of the Beneficiaries in order to maximize the value of the Trust Assets and distributions, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing, the Unsecured Creditors' Trustee may submit to the Bankruptcy Court any question(s) for which the Unsecured Creditors' Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Unsecured Creditors' Trustee with respect to the Trust Assets, the entity created hereunder, or the Beneficiaries or the Convenience Beneficiaries, and as provided in the Plan and this Agreement, including the administration and distribution of the Trust Assets. The Bankruptcy Court shall retain jurisdiction for such purposes and shall approve or disapprove

any such proposed action upon motion. Neither the Unsecured Creditors' Trust nor the Unsecured Creditors' Trustee shall have any liability whatsoever with respect to any act or omission that has been approved by the Bankruptcy Court.

      3.9      <u>The Trust Advisory Board</u>

      A.      Subject to the provisions of the Unsecured Creditors' Trust Agreement, the Trust Advisory Board shall be comprised of up to three (3) members which shall be designated by the Creditors' Committee. The Unsecured Creditors' Trustee shall consult as the Unsecured Creditors' Trustee deems necessary or as reasonably requested by the Trust Advisory Board when carrying out the purpose and intent of the Unsecured Creditors' Trust. Members of the Trust Advisory Board shall be entitled to reimbursement of the reasonable and necessary expenses incurred by them in carrying out the purpose of the Trust Advisory Board, which shall be payable by the Unsecured Creditors' Trust.

      B.      In the case of an inability or unwillingness of any member of the Trust Advisory Board to serve, such member may (but is not required to be) be replaced by designation of the remaining members of the Trust Advisory Board.

      C.      Upon the distribution of the Unsecured Creditors' Trust Proceeds, and the completion of the Unsecured Creditors' Trustee's responsibilities, the members of the Trust Advisory Board shall be deemed to resign their positions, whereupon they shall be discharged from further duties and responsibilities.

      D.      Notwithstanding anything to the contrary in the Plan, neither the Trust Advisory Board nor any of its members, designees, counsel, financial advisors or any duly designated agent or representatives of any such party shall be liable for the act, default or

misconduct of any other member of the Trust Advisory Board, nor shall any member be liable for anything other than such members' own gross negligence or willful misconduct. The Trust Advisory Board may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its counsel, accountants or other professionals, and shall not be liable for anything done or omitted or suffered to be done in accordance with such advice or opinions. If the Trust Advisory Board determines not to consult with counsel, accountants or other professionals, such action or omission shall not be deemed to impose any liability on the Trust Advisory Board, or its members and/or designees.

E. The Trust Advisory Board may govern its proceedings through the adoption of bylaws, which the Trust Advisory Board may adopt by majority vote.

## ARTICLE IV

## DISTRIBUTIONS TO BENEFICIARIES

4.1 <u>Convenience Claims Distribution</u>. The Unsecured Creditors' Trustee shall make the Convenience Claims Distribution to the holders of Allowed Convenience Claims on or before the date that is 180 days after the Effective Date (the "<u>Initial Distribution Date</u>") or as soon thereafter as (1) all Convenience Class Claims have been either Allowed or disallowed or (2) is otherwise practicable. Each holder of an Allowed Convenience Claim shall receive, in full and final satisfaction of such Claim, either a distribution in Cash equal to ten percent (10%) of such holder's Allowed Convenience Claim or such holder's *pro rata* share of a maximum combined distribution in the amount of $425,000 (the "<u>Convenience Class Cash</u>") to be funded out of the Unsecured Creditors' Trust proceeds to holders of Allowed Convenience Claims, whichever is less. Any portion of the Convenience Class Cash remaining after all distributions on account of Class 5 Claims shall be applied to fund distributions on account of Class 4 Claims.

4.2    Distributions to Holders of General Unsecured Claims.  The Unsecured Creditors' Trustee shall make its first *pro rata* distributions to holders of Allowed General Unsecured Claims from Available Cash, less any Class 4 Disputed Claims Reserve, to the Beneficiaries on or before the date that is 180 days after the Effective Date (*i.e.,* the "Initial Distribution Date") or as soon thereafter as is practicable in the Unsecured Creditors' Trustee's discretion, and shall have the discretion to identify additional periodic distribution dates ("Periodic Distribution Dates") for purposes of making distributions pursuant to the Plan, as necessary.   Periodic Distribution Dates shall occur at least annually, except that the Unsecured Creditors' Trustee may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet expenses, claims and contingent liabilities of the trust and Unsecured Creditors' Trustee, and retention of such amount may preclude Distributions to Beneficiaries.

Upon the completion of the claims reconciliation process in accordance with the procedures set forth in the Plan, the Unsecured Creditors' Trustee shall distribute the Class 4 Disputed Claims Reserve to the holders of Allowed Class 4 General Unsecured Claims such that, after giving effect to such distribution, each holder of an Allowed General Unsecured Claim shall have received its *pro rata* share of the Trust Assets.

In order to receive a distribution, the Unsecured Creditors' Trustee shall require any Beneficiary to furnish to the Unsecured Creditors' Trustee an executed IRS Form W-9 or applicable IRS Form W-8, and the Unsecured Creditors' Trustee may condition any Distribution upon receipt of such document.  Failure to supply such Form W-9 or applicable IRS Form W-8 shall relieve the Unsecured Creditors' Trustee from making any distribution to such non-complying Beneficiary.  Any Beneficiary that does not provide his, her or its current executed

-19-

Form W-9, Form W-8, or similar tax form within thirty (30) days of the Unsecured Creditors'
Trustee's written request for such form shall have his, her or its claim treated as an unclaimed
property under the Plan without further order of the Bankruptcy Court or action by the
Unsecured Creditors' Trustee.

       4.3    <u>Class 4 Disputed Claims Reserve</u>.  The Unsecured Creditors' Trustee shall reserve
a portion of the Trust Assets for the benefit of the holders of Disputed Claims, in an amount
equal to the Plan Distributions such holders of Disputed Claims would be entitled to receive on
the Initial Distribution Date or other Periodic Distribution Date if such Disputed Claims were
Allowed in their full amounts on such date (or, if applicable, the amounts of the Disputed Claims
as estimated by the Bankruptcy Court pursuant to the Plan).

       4.4    <u>Distributions on Disputed Claims</u>.  Unless the Unsecured Creditors' Trustee
otherwise agrees or determines, no partial distributions shall be made with respect to a Disputed
Claim until all disputes in connection with such Disputed Claim have been resolved by Final
Order of the Bankruptcy Court.  Any holder of a Disputed Claim that ultimately becomes an
Allowed General Unsecured Claim shall (i) receive no more from the Class 4 Disputed Claims
Reserve than the amount reserved with respect to such Disputed Claim under the Plan and this
Agreement, and (ii) not have recourse to the Debtors, the Reorganized Debtors, or any property
transferred pursuant to the Plan (other than the Trust Assets and the Class 4 Disputed Claims
Reserve).

       4.4    <u>Undeliverable Distributions</u>.  If a distribution is returned as undeliverable, or no
address for such holder is found in the Debtors' records, such undeliverable distributions shall be
governed by Article VII.G.1.(iii) of the Plan.

-20-

4.5     Withholding from Distributions.  The Unsecured Creditors' Trustee may withhold from amounts distributable to any Beneficiary or Convenience Beneficiary any and all amounts, determined in the sole and reasonable discretion of the Unsecured Creditors' Trustee, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

4.6     De Minimis Distributions.  The Unsecured Creditors' Trustee shall not be required to make distributions to any Beneficiary if the dollar amount of the distribution is less than $10.00.

4.7     Payments Limited to Trust Assets.  All payments to be made by the Unsecured Creditors' Trustee to or for the benefit of any Beneficiary or Convenience Beneficiary shall be made only from the Trust Assets or proceeds thereof.

4.8     Change of Address.  A Beneficiary or Convenience Beneficiary may, after the Effective Date, select an alternative distribution address by filing a notice with the Bankruptcy Court or by submitting written notice under penalty of perjury to the Unsecured Creditors' Trustee identifying such alternative distribution address.  Absent such notice or unless otherwise agreed to by the Unsecured Creditors' Trustee, the Unsecured Creditors' Trustee shall not recognize any such change of distribution address.  Such notification shall be effective only upon written receipt by the Unsecured Creditors' Trustee satisfactory to the Unsecured Creditors' Trustee accompanied by sufficient evidence of a change of address.

## ARTICLE V

### BENEFICIARIES

5.1     Incidents of Ownership.  The Beneficiaries and the Convenience Beneficiaries shall be the sole beneficiaries of the entity created hereunder and the Trust Assets (subject to the Reorganized Debtors' reversionary interest set forth in Section 10.4 below), and the Unsecured

-21-

Creditors' Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized in this Agreement, the Plan and the Confirmation Order.

5.2     Interest Beneficial Only.  The ownership of a beneficial interest in the entity created hereunder shall not entitle any Beneficiary or Convenience Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.3     Evidence of Beneficial Interest.  Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the entity created hereunder by the Unsecured Creditors' Trustee.

5.4     Notice of Transfer of Beneficial Interest.  Any notice of a change of beneficial interest ownership shall be provided in accordance with this Agreement.  The notice shall be executed by both the transferee and the transferor with the transferee supplying an IRS Form W-9 or applicable IRS Form W-8 within ten (10) days of the aforementioned notice, and the signatures of the parties shall be acknowledged before a notary public under penalty of perjury and as required by Bankruptcy Rule 3001(e).  The notice must clearly describe the interest to be transferred.   The Unsecured Creditors' Trustee may rely upon such signatures and acknowledgments as evidence of such transfer without the requirement of any further investigation.

## ARTICLE VI

### THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Reliance.  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, the Unsecured Creditors' Trustee may rely and shall be protected in acting

upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed to be genuine and to have been signed or presented to the Unsecured Creditors' Trustee.

6.2    Parties Dealing With the Unsecured Creditors' Trustee.  In the absence of actual knowledge to the contrary, any person dealing with the Unsecured Creditors' Trust created hereunder or the Unsecured Creditors' Trustee shall be entitled to rely on the authority of the Unsecured Creditors' Trustee or any of the Unsecured Creditors' Trustee's agents to act in connection with the Trust Assets.  There is no obligation on any Person dealing with the Unsecured Creditors' Trustee to inquire into the validity, expediency, or propriety of any transaction by the Unsecured Creditors' Trustee or any agent of the Unsecured Creditors' Trustee.

6.3    Limited Recourse.  Persons (including any professionals retained by the Unsecured Creditors' Trustee in accordance with this Agreement) engaged in transactions with the Unsecured Creditors' Trust created hereunder or the Unsecured Creditors' Trustee shall look only to the Trust Assets to satisfy any liability incurred in connection with the carrying out the terms of this Agreement, the Plan, or the Confirmation Order.

6.4    Indemnification and Exculpation.  The Unsecured Creditors' Trustee or the individuals comprising the Unsecured Creditors' Trustee, as the case may be, and the Unsecured Creditors' Trustee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Unsecured Creditors' Trustee, except those acts arising out of its or their own willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Unsecured Creditors' Trustee, except for any

-23-

actions or inactions involving willful misconduct or gross negligence. Any indemnification claim of the Unsecured Creditors' Trustee (and the other parties entitled to indemnification under this subsection) shall be satisfied solely from the Trust Assets. The Unsecured Creditors' Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals, and shall not be liable for any action taken, omitted, or suffered in reliance on the advice of such retained professionals, regardless of whether such advice or opinions are provided in writing. In no event shall the Unsecured Creditors' Trustee be liable for indirect. special, punitive, incidental or consequential damages (including, but not limited to, lost profits) even if Unsecured Creditors' Trustee has been informed of the likelihood of such damages.

6.5     Non-Liability for Acts of Others. Nothing contained in this Agreement, the Plan, or the Confirmation Order shall be deemed to be an assumption by the Unsecured Creditors' Trustee of any of the liabilities, obligations, or duties of the Debtors, Beneficiaries, or Convenience Beneficiaries and shall not be deemed to be or contain a covenant or agreement by the Unsecured Creditors' Trustee to assume or accept any such liability, obligation, or duty. Any successor Unsecured Creditors' Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Unsecured Creditors' Trustee hereunder, and any statement or representation made by a predecessor Unsecured Creditors' Trustee or his, her, or its agents as to the Trust Assets or as to any other fact bearing upon the prior administration of the entity created hereunder, so long as he, she, or it has a good faith basis to do so. The Unsecured Creditors' Trustee or successor Unsecured Creditors' Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue. The Unsecured Creditors' Trustee or successor Unsecured Creditors' Trustee shall not be liable for any act or omission of any predecessor Unsecured

-24-

Creditors' Trustee, nor have a duty to enforce any claims against any predecessor Unsecured Creditors' Trustee on account of any such act or omission.

## ARTICLE VII

## REMOVAL AND COMPENSATION OF UNSECURED CREDITORS' TRUSTEE

7.1     Term of Service.   The Unsecured Creditors' Trustee shall serve until (a) the completion of all the Unsecured Creditors' Trustee duties, responsibilities and obligations under this Agreement and the Plan; (b) termination of the Unsecured Creditors' Trust created hereunder in accordance with this Agreement; or (c) the Unsecured Creditors' Trustee's death, liquidation, dissolution, incapacitation, resignation, or removal, as set forth below or as provided for in the Plan.  Without limiting in any way any provision of this Agreement, the provisions of Article VI of this Agreement shall survive the death, liquidation, dissolution, incapacitation, resignation, or removal of the Unsecured Creditors' Trustee or the termination of the Unsecured Creditors' Trust or this Agreement.

7.2     Removal of Unsecured Creditors' Trustee.   The Trust Advisory Board may remove the Unsecured Creditors' Trustee in its discretion.  The Unsecured Creditors' Trustee also may be removed by the Court for cause shown.   If removal of the Unsecured Creditors' Trustee is sought from the Bankruptcy Court under such a motion for cause (or similar motion), then the Unsecured Creditors' Trustee is entitled to oppose such motion and to pay his, her or its reasonable attorneys' fees and expenses in connection with such objection from the Trust Assets.

7.3     Resignation of Unsecured Creditors' Trustee.  The Unsecured Creditors' Trustee may resign at any time by giving the Trust Advisory Board at least thirty (30) days' written notice of the Unsecured Creditors' Trustee intention to do so.  In the event of a resignation, the resigning Unsecured Creditors' Trustee shall render to the Trust Advisory Board a full and

-25-

complete accounting of monies and assets received, disbursed, and held during the term of office of that Unsecured Creditors' Trustee. The resignation shall be effective on the later of (a) the date specified in the notice; (b) the date that is thirty days (30) after the date the notice is delivered; or (c) the date the accounting described in the preceding sentence is delivered.

7.4     Appointment of Successor Unsecured Creditors' Trustee. Subject to the Plan, upon the resignation, death, incapacity, dissolution, liquidation, or removal of an Unsecured Creditors' Trustee the Trust Advisory Board shall, by majority vote, designate a person to serve as successor Unsecured Creditors' Trustee. The identity of any successor Unsecured Creditors' Trustee shall be promptly disclosed in a filing with the Court. Any successor Unsecured Creditors' Trustee so appointed shall consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Unsecured Creditors' Trustee and all of the successor Unsecured Creditors' Trustee's heirs and legal and personal representatives, successors or assigns. Notwithstanding anything in this Agreement, in the event that a successor Unsecured Creditors' Trustee is not appointed within sixty (60) days of the occurrence or effectiveness, as applicable, of the prior Unsecured Creditors' Trustee's resignation, death, incapacity, or removal, the Bankruptcy Court shall appoint a successor Unsecured Creditors' Trustee upon motion of a party in interest or otherwise.

7.5     Powers and Duties of Successor Unsecured Creditors' Trustee. A successor Unsecured Creditors' Trustee shall have all the rights, privileges, powers, and duties of the predecessor Unsecured Creditors' Trustee under this Agreement and the Plan.

7.6     Continuance. The death, incapacity, resignation or removal of the Unsecured Creditors' Trustee shall not terminate the Unsecured Creditors' Trust created hereunder or

revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Unsecured Creditors' Trustee.

## ARTICLE VIII

## TAX TREATMENT

8.1     Tax Treatment.    It is intended that the Unsecured Creditors' Trust created hereunder be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Sections 671 through 677 of the Internal Revenue Code. In furtherance of this objective, the Unsecured Creditors' Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the entity created hereunder.   All assets, as described in Section 2.3 of this Agreement, held by the Unsecured Creditors' Trust shall be deemed for federal income tax purposes to have been distributed by the Debtors or Reorganized Debtors to holders of Allowed General Unsecured Claims in Class 4 and Allowed Convenience Claims in Class 5 under the Plan and then contributed by such holders to the Unsecured Creditors' Trust in exchange for their interest in the Unsecured Creditors' Trust.   The deemed distribution and contribution of the assets shall take place in a manner as set forth in this Agreement. All holders shall use the valuation of the assets transferred to the Unsecured Creditors' Trust as established by the Unsecured Creditors' Trustee for all federal income tax purposes. The Beneficiaries and Convenience Beneficiaries will be treated as the grantor of the Unsecured Creditors' Trust created hereunder. The Unsecured Creditors' Trust created hereunder will be responsible for filing information on behalf of the Unsecured Creditors' Trust created hereunder as grantor trust pursuant to Treasury Regulation Section 1.671-4(a).   The foregoing treatment shall also apply, to the extent permitted by applicable law, for all state, provincial,

territorial, non-U.S., and local income tax purposes. Further, the Unsecured Creditors' Trust is intended to comply with the conditions and the requirements set forth in Rev. Proc. 94-45, 1994-2 CB 684.

As soon as reasonably practicable following the Effective Date, (i) the Unsecured Creditors' Trustee will determine the fair market value of the Trust Assets (other than Cash) as of the Effective Date, based on a good faith determination and the advice of any professionals retained by the Unsecured Creditors' Trustee for such purpose, and (ii) the Unsecured Creditors' Trustee shall notify the Debtors, the Reorganized Debtors, the Convenience Beneficiaries, and the Beneficiaries of such valuation. Such valuation must be utilized by the Debtors, the Reorganized Debtors, the Unsecured Creditors' Trustee, and the Beneficiaries for all U.S. federal income tax purposes.

Other than with respect to the Disputed Claims Reserve, allocations of taxable income with respect to the Unsecured Creditors' Trust shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restriction on distributions described herein) if, immediately prior to such deemed distribution, the Unsecured Creditors' Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the Beneficiaries and Convenience Beneficiaries, taking into account all prior and concurrent distributions from the Unsecured Creditors' Trust. Similarly, taxable losses of the Unsecured Creditors' Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining assets. The tax book value of the assets for this purpose shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired by the assets, adjusted in either case in accordance with tax accounting principles prescribed by the applicable Internal

-28-

Revenue Code provisions, the Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

To the extent any remaining proceeds (after full satisfaction of the Beneficiaries' Allowed Class 4 General Unsecured Claims, the Convenience Beneficiaries' Allowed Class 5 Claims, and resolution of all Disputed General Unsecured Claims and payment of all other amounts that may reasonably be required to satisfy unpaid costs or expenses of the Unsecured Creditors' Trustee entitled to be paid pursuant to this Agreement, including without limitation, any and all taxes and professionals' fees and costs) are distributed to the Reorganized Debtors, the Unsecured Creditors' Trust, the Unsecured Creditors' Trustee, Beneficiaries, and/or Convenience Beneficiaries shall not be responsible for paying any taxes on or associated with such remaining proceeds distributed to the Reorganized Debtors, and the Reorganized Debtors shall not look to the Trust Assets, the Unsecured Creditors' Trust, the Unsecured Creditors' Trustee, the Beneficiaries, or the Convenience Beneficiaries for payment or reimbursement of any such taxes.

The Unsecured Creditors' Trustee may, in its sole discretion, (i) timely elect to treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (ii) to the extent permitted by applicable law, report consistently with the foregoing for applicable state, provincial, territorial, non-U.S., and local income tax purposes.

8.2     Tax Returns.  In accordance with the Plan, the Unsecured Creditors' Trustee shall cause the filing of tax returns for the entity created hereunder, as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a); *provided*, *however*, that the Unsecured Creditors' Trustee shall take all appropriate steps to file separate returns required with respect to the

Disputed Claims Reserve to the extent that an election (if any) is made to report a reserve for disputed Claims as a disputed ownership fund.

8.3     Determination of Taxes.  The Unsecured Creditors' Trustee may request an expedited determination of taxes of the Unsecured Creditors' Trust, under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Unsecured Creditors' Trust for all taxable periods through the dissolution of the Unsecured Creditors' Trust, and to take any and all action necessary to obtain payment of any tax refund(s) due to the Unsecured Creditors' Trust.

8.4     Filing, Reporting, Withholding, Liability for Taxes.  The Unsecured Creditors' Trustee shall be responsible for filing all federal, state, local and foreign tax returns for the Unsecured Creditors' Trust.  The Unsecured Creditors' Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions made by the Unsecured Creditors' Trust shall be subject to any such withholding and reporting requirements.  Any amounts withheld pursuant to this Section 8.4 shall be treated as distributed to the Person or entity in respect of whom such withholding was made.

The Unsecured Creditors' Trust shall be responsible for payment, solely from the assets contributed to the Unsecured Creditors' Trust, for any Taxes imposed on the Unsecured Creditors' Trust, including the Disputed Claims Reserve.

## ARTICLE IX

## MAINTENANCE OF BOOKS AND RECORDS

9.1     The Unsecured Creditors' Trustee shall maintain books and records containing a description of all property from time to time constituting the Trust Assets and an accounting of all receipts and disbursements.  Said books and records shall be open to inspection by any Beneficiary, Convenience Beneficiary, or the Reorganized Debtors at any reasonable time during

normal business hours. The Unsecured Creditors' Trustee shall furnish to any Beneficiary or Convenience Beneficiary upon written request an annual statement of receipts and disbursements, including a summary of all income and expenses of the entity created hereunder.

## ARTICLE X

## DURATION, BUDGET, AND COST RESERVE

10.1 <u>Duration</u>. The Unsecured Creditors' Trust shall become effective upon the Effective Date of the Plan and shall remain and continue in full force and effect until the entity created hereunder is terminated.

10.2 <u>Termination</u>. Subject to the Plan, the Unsecured Creditors' Trustee shall be discharged and the Unsecured Creditors' Trust shall be terminated, at such time as (1) all Disputed General Unsecured Claims, Convenience Claims or Secured Claims (as applicable) have been resolved, (2) all of the Trust Assets have been liquidated, (3) all duties and obligations of the Unsecured Creditors' Trustee hereunder and in the Plan have been fulfilled, and (4) all distributions required to be made to the Beneficiaries and Convenience Beneficiaries under the Plan and the Agreement have been made (including the reversion and distribution of amounts to the Reorganized Debtors in accordance with Section 10.4 below). In no event shall the entity created hereunder be dissolved later than five (5) years from the Effective Date unless (a) the Unsecured Creditors' Trustee and the Trust Advisory Board agree, or (b) the Bankruptcy Court, upon motion by the Unsecured Creditors' Trustee, determines that a fixed period extension is necessary to facilitate or complete the liquidation, recovery and distribution of the Trust Assets; provided however that any such extension shall not adversely affect the status of the entity created hereunder as a liquidating trust for federal income tax purposes.

-31-

10.3     Continuance for Winding Up.  After the termination of the Unsecured Creditors'

Trust and for the purpose of liquidating and winding up the affairs of the Unsecured Creditors'

Trust, the Unsecured Creditors' Trustee shall continue to act as such until the Unsecured

Creditors' Trustee's duties have been fully performed, including, without limitation, such post-

distribution tasks as necessary to windup the affairs of the Unsecured Creditors' Trust.  After the

termination of the entity created hereunder, the Unsecured Creditors' Trustee shall retain for a

period of six (6) months the books, records, beneficiary lists, and certificates and other

documents and files which shall have been delivered to or created by the Unsecured Creditors'

Trustee.  At the Unsecured Creditors' Trustee's discretion, all of such records and documents

may, but need not, be destroyed at any time after six (6) months from the completion and

winding up of the affairs of the Unsecured Creditors' Trust.  Except as otherwise specifically

provided for herein, upon the final distribution and discharge of all liabilities of the Unsecured

Creditors' Trust, the Unsecured Creditors' Trustee shall have no further duties or obligations

hereunder.

10.4     Reversion to Debtors; Distribution of Remaining Assets.   Notwithstanding

anything to the contrary herein (a) under no circumstances shall any Beneficiary recover from

the Trust Assets an amount greater than the Allowed amount of its General Unsecured Claim and

(b) in the event that all Allowed General Unsecured Claims have been fully satisfied and all

Disputed General Unsecured Claims have been resolved, any remaining amounts (other than

such amounts that may reasonably be required to satisfy unpaid costs or expenses of the

Unsecured Creditors' Trustee entitled to be paid pursuant to this Agreement, including without

limitation, any and all taxes and professional fees and costs) shall revert and be distributed to the

Reorganized Debtors.

## ARTICLE XI

## MISCELLANEOUS

11.1 <u>Jurisdiction</u>. The Bankruptcy Court shall have exclusive jurisdiction over (a) the Unsecured Creditors' Trust and the Unsecured Creditors' Trustee with respect to the administration of and activities relating to the Unsecured Creditors' Trust, as well as (b) any issues or disputes arising out of this Agreement.

11.2 <u>Limitation on Transferability</u>. An assignment or transfer of a Beneficiary's interest shall not be effective until appropriate notification and proof thereof is submitted to the Unsecured Creditors' Trustee and a new IRS Form W-9 or applicable IRS Form W-8 is received by the Unsecured Creditors' Trustee, and the Unsecured Creditors' Trustee may continue to pay all amounts to or for the benefit of the assigning or transferring Beneficiary until receipt of proper notification and proof of assignment or transfer. The Unsecured Creditors' Trustee may rely upon such proof without the requirement of any further investigation.

11.3 <u>Notices</u>. All notices to be given to Beneficiaries and Convenience Beneficiaries may be given by ordinary mail, or may be delivered personally, to the holders at the addresses appearing on the books kept by Unsecured Creditors' Trustee. Any notice or other communication which may be or is required to be given, served, or sent to the Unsecured Creditors' Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

-33-

If to the Unsecured Creditors' Trustee:

META Advisors, LLC
101 Park Avenue
New York, New York 10175
Attn.: James D. Hunt

with copies to:

David B. Kurzweil
Greenberg Traurig, LLP
Terminus 200
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia 30305
Facsimile: 678-553-2681

or to such other address as may from time to time be provided in written notice by the Unsecured Creditors' Trustee.

11.4    No Bond.    Notwithstanding any state law to the contrary, the Unsecured Creditors' Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction.  The Unsecured Creditors' Trustee may, in his, her, or its discretion, obtain insurance coverage with respect to the liabilities and obligations of the Unsecured Creditors' Trustee and the Trust Advisory Board, which shall be an expense of the Unsecured Creditors' Trust and paid out of the Trust Assets.

11.5    Governing Law.    This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to conflicts of law principles.

11.6    Successors and Assigns.  This Agreement shall inure to the benefit of and shall be binding upon the Parties hereto and their respective successors and assigns.

11.7    Headings.  The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or understanding of this Agreement or any provision hereof.

-34-

11.8    No Execution.  All funds in the Unsecured Creditors' Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary or Convenience Beneficiary, and no Beneficiary or Convenience Beneficiary or any other person can bind, pledge, encumber, execute upon, garnish, or attach the Trust Assets or the Unsecured Creditors' Trustee in any manner or compel payment from the Unsecured Creditors' Trust except by Final Order of the Bankruptcy Court.  Payment shall be governed solely by the Plan and this Agreement.

11.9    Plan and Confirmation Order.  To the extent that the terms of this Agreement are inconsistent with the terms set forth in the Plan, then the terms of the Plan shall govern and control.  To the extent that the terms of this Agreement are inconsistent with the terms set forth in the Confirmation Order, then the terms of the Confirmation Order shall govern and control.

11.10   Severability.  If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

11.11   Counterparts.  This Agreement may be executed simultaneously in counterparts and each such counterpart shall be deemed an original, all of which counterparts together shall constitute one and the same instrument.

[*Signature Page Follows*]

IN WITNESS WHEREOF, the Parties have executed this Agreement (or are deemed to have so executed this Agreement) as of the day and year written above.

META Advisors LLC, not individually, but solely in its capacity as Unsecured Creditors' Trustee of the Buffets Unsecured Creditors' Trust

By: _____
James D. Hunt
Chief Operating Officer

Buffets, LLC and its affiliated debtors and debtors in possession

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, the Parties have executed this Agreement (or are deemed to have so executed this Agreement) as of the day and year written above.


Unsecured Creditors' Trustee

By: _____
    Name: _____
    Title:  Unsecured Creditors' Trustee

Buffets, LLC and its affiliated debtors and debtors in possession

By: _____
    Name: _____Peter Donbavand_____
    Title: _____vice president_____

-36-