UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES | |
| IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTE CONFLICT ID NUMBERS:<br><br>261129 (BUFFETS LEASING CO. LLC), 261130 (HOMETOWN LEASING CO. LLC), 261136 (HOMETOWN BUFFET, INC.), 261137 (OCB LEASING CO. LLC), 261139 (BUFFETS FRANCHISE HOLDINGS, LLC), 261141 (RYAN'S REST. MGMT. GRP., LLC), 261143 (OCB PURCHASING CO.), 261144 (DISTINCTIVE DINING, INC.), 261147 (FIRE MTN. LEASING CO., LLC), 261148 (FIRE MTN. MGMT. GRP., LLC), 261149 (BUFFETS HOLDINGS, INC.), 261150 (TAHOE JOE'S LEASING CO. INC.), 261151 (BIG R PROCUREMENT CO., LLC), 261152 (BUFFETS REST. HOLDINGS, INC.), 261153 (RYAN'S REST. LEASING CO. LLC), 261199 (RYAN'S REST. GRP., LLC), 261263 (TAHOE JOE'S, INC.), 261290 (OCB REST. CO., INC.), 261307 (FIRE MTN. RESTAURANTS LLC), and 261449 (BUFFETS, INC.). | **<u>ORDER ADOPTING REPORT AND RECOMMENDATION</u>**<br><br>24-mc-3415 (BMC)<br>26-mc-2391 (BMC) |

**COGAN**, District Judge.

This matter is before me on the Report and Recommendation ("R&R") of the Special Master, Judge James Orenstein (Ret.), dated June 10, 2026. The Court has reviewed OPP's objections, as well as NRS and BSH's responses to those objections. For the reasons set forth

below, the Court overrules the objections and adopts each of Judge Orenstein's recommendations.[1]

## I. Recommendation One

Judge Orenstein's first recommendation is that the Court find that the 2011 NRS Agreements did not convey an ownership interest in any of the Buffets Entities' MDL 1720 damages claims (hereinafter referred to as "damages claims") but instead conferred on NRS a contractual right to collect a service fee from NRS's counterparty (or its successor) in exchange for performing claim-filing services. The Court adopts this recommendation while noting that NRS does not object.

NRS and Buffets entered into two agreements. Under those agreements, NRS would file Buffets' damages claim forms in exchange for a service fee. NRS asserts that the agreements bound not only Buffets but the Buffets Entities, and that the agreements gave it a direct stake in the settlement fund. The Court disagrees with the latter contention; therefore, it need not and does not resolve the former.

The agreements at issue clearly established an agency relationship and did not transfer to NRS any ownership interest in Buffets' (or the Buffets Entities') damages claims. Indeed, neither of the agreements is titled "Asset Purchase Agreement" or anything close; rather, the agreements are titled "Amended Recovery Services Agreement" and "Agency Appointment and Authorization." Looking beyond the titles, the Court sees nothing in the content of either agreement that would suggest that NRS assumed ownership of Buffets' (or the Buffets Entities') damages claim or that would otherwise give NRS a direct stake in the settlement fund.

[1] The Court assumes familiarity with the issues and refers to the R&R for further background. In addition, the Court uses the titles and abbreviations from the R&R and defines them when necessary.

## II. Recommendation Two

Judge Orenstein's second recommendation is that the Court decline to resolve any contract or quasi-contract claim that NRS may assert against any of the parties to secure a service fee. The Court adopts this recommendation while noting that NRS does not object.

In its order approving the damages settlement, the Court retained jurisdiction over the plaintiffs, class members, and defendants "to implement, administer, consummate, and enforce the [settlement], including any disputes relating to, or arising out of, ... any claim for payment from the Class Settlement Cash Escrow Account." NRS and the parties with whom it has service-fee disputes (BSH, CCB and its affiliates Park and PRA, and OPP) are not plaintiffs or defendants and, with respect to the service-fee disputes, are not class members. The disputes do not turn on which entity has a claim to the settlement fund, but whether NRS is entitled to a cut from what these entities ultimately claim from the settlement fund. Plainly put, NRS is asking the Court to resolve peripheral contract and quasi-contract claims which do not fall under this Court's retained settlement jurisdiction; NRS must bring these claims in independent lawsuits, outside of MDL 1720.

## III. Recommendation Three

Judge Orenstein's third recommendation is that the Court find that the 2012 Order did not convey any of the Buffets Entities' damages claims to the Litigation Trust. In turn, Judge Orenstein recommends that the Court conclude that (a) ownership of those claims vested in the reorganized 2012 Debtors when that Order took effect on July 18, 2012; (b) the Litigation Trust never owned any such claims or conveyed them to OPP under its first asset purchase and sale agreement ("APA") with OPP; and (c) OPP never conveyed any such claims to PRA under its subsequent APA with PRA. The Court adopts this recommendation.

The background, as set forth more fully in Judge Orenstein's R&R, is this:

- On January 18, 2012, Buffets and 15 related entities (the "2012 Debtors") filed for Chapter 11 relief in the Bankruptcy Court for the District of Delaware. Their assets thus became the property of the bankruptcy estate.

- The Bankruptcy Court approved a reorganization plan on June 27, 2012, effective as of July 18, 2012 (the "2012 Order"). In so doing, the Bankruptcy Court established the "Litigation Trust."

- The reorganization plan provided that the 2012 Debtors would transfer to the Litigation Trust "all right, title, and interest in the Transferred Avoidance Actions."

    - The plan defines "Transferred Avoidance Actions" as, circularly, "all Avoidance Actions, other than the Excluded Avoidance Actions, that will be transferred to the Litigation Trust." Thus, transferred to the Litigation Trust would be all "Avoidance Actions" that were not excluded from such transfer.

    - The plan defines "Avoidance Actions" as "those certain claims or causes of action ... pursuant to sections 510, 542, 543, 544, 545, 547, 548, 550, or 551 of the Bankruptcy Code or under any other similar applicable law."

Importantly, the reorganization plan did not reference the Buffets Entities' damages claims. Thus, in determining whether the 2012 Order conveyed the Buffets Entities' damages claims to the Litigation Trust, the key question is whether the damages claims were "Avoidance Actions" such that they were among the Transferred Avoidance Actions that the plan vested in the Litigation Trust.[2]

The Court agrees with Judge Orenstein (who agrees with NRS) that the damages claims are not Avoidance Actions. Sections 510, 542, 543, 544, 545, 547, 548, 550, and 551 of the Bankruptcy Code are, as NRS states, "quintessential bankruptcy claims, causes of action, and remedies, and are categorically distinct from the claims and causes of action arising under federal antitrust law that were originally held by the Buffets Entities" in the MDL. Because the damages claims were not Avoidance Actions, they were not Transferred Avoidance Actions and therefore did not become part of the Litigation Trust. Instead, the damages claims reverted from

[2] The parties agree that the Buffets Entities' damages claims were not Excluded Avoidance Actions.

the bankruptcy estate to the reorganized debtors that originally owned them. And *because* the Buffets Entities' damages claims did not become part of the Litigation Trust, they were not among the remnant assets that the Litigation Trust sold to OPP and that OPP later sold to PRA.

## IV. Recommendations Four and Five

Judge Orenstein's fourth recommendation is that the Court find that the Buffets-Cascade APA transferred ownership of all of the Buffets Entities' damages claims to Cascade on July 2, 2013. His fifth recommendation is that the Court find that the Cascade-BSH Origination and Service Agreement ("OSA") transferred ownership of all of the Buffets Entities' damages claims to BSH on July 3, 2013. The Court adopts these recommendations.

The Buffets-Cascade APA obviously transferred Buffets' damages claim to Cascade. With a little digging, it's clear that the Buffets-Cascade APA also transferred the Buffets *Entities'* damages claims to Cascade, as Schedule B to the APA's "Authorization to Obtain Transactional Data" explicitly identified by name each of those entities which "comprise[d] the company listed in the Notice of Assignment."[3]

The Cascade-BSH OSA was executed the next day. Under that agreement, Cascade transferred to BSG the asset that it had just purchased from Buffets. Because the Buffets-Cascade APA transferred the Buffets Entities' damages claims to Cascade, Cascade thus transferred the Buffets Entities' damages claims to BSH via the OSA.

[3] OPP questions the authenticity of the Authorization to Obtain Transactional Data for several reasons, none of which the Court finds persuasive for the reasons set forth in NRS and BSH's responses. Relatedly, the Court denies OPP's request for discovery regarding Schedule B. The Authorization to Obtain Transactional Data, in which Schedule B appears, is signed in wet ink and thus was scanned in. Schedule B is not signed (albeit there is no place designated for a signature) and appears to be computer-generated. Presumably, without a wet ink signature, there was no reason to scan it in. The Court does not think that Schedule B looks fishy. But if OPP felt otherwise, which it now claims that it does, it should have said something earlier. BSH submitted Schedule B to Judge Orenstein and the parties nearly four weeks before the R&R was issued. OPP did not ask Judge Orenstein to defer his recommendation and did not request authentication evidence, other discovery, or even a conference. Indeed, OPP admits that "no questions were raised about Schedule B and its authenticity" – OPP can be counted among those who stayed silent. OPP clearly raises this challenge only now because it is dissatisfied with the result.

## V. Recommendations Six and Seven

Judge Orenstein's sixth recommendation is that the Court find that the Buffets Entities no longer owned any damages claims when the 2016 Debtors sought bankruptcy relief on March 16, 2016, and therefore the Unsecured Creditors' Trust never owned such claims or conveyed them to OPP under their APA. Judge Orenstein's seventh recommendation is that the Court find that the Buffets Entities no longer owned any damages claims when the 2021 Debtors sought bankruptcy relief on April 20, 2021, and therefore the Liquidating Trust never owned such claims or conveyed them to OPP under their APA. The Court adopts these recommendations.

As explained in Section IV, *supra*, Buffets sold the Buffets Entities' damages claims to Cascade, and Cascade then sold the damages claims to BSH. Thus, as of July 3, 2013, BSH became the owner of all the Buffets Entities' damages claims. Thus, by 2016 and 2021, there were no damages claims to convey. Besides, of the four APAs that OPP executed, none of them explicitly referenced the MDL, and nothing in them implies that the assets that they conveyed had anything to do with the MDL.

* * *

The Court adopts the R&R in full as set forth above.

**SO ORDERED.**

Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
August 17, 2026